STELLA SHEWCZUK *vs.* CONTREXEVILLE MANUFACTURING CO.

APRIL 5, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J. This is a petition by a widow to recover compensation for the death of her husband, John Shewczuk. The petition is before this court on her appeal from a decree of the Superior Court denying her petition. Petitioner claims that the decree is against the law and the weight of the evidence.

John Shewczuk worked for defendant for about ten years as a textile operator. On December 12, 1929, about 6:15 o'clock, a. m., he left his home and went to work in the finishing room. His duties were to pack cloth in boxes and get them ready for shipment. About 11:30 o'clock he went out of doors to a carboy of sulphuric acid which was about fifteen feet from the door, broke off the neck of the bottle with a metal scraper, poured some of the acid into a glass jar and drank it, threw the jar away and ran into the finishing room, screaming with pain. He then ran out of doors and threw himself into the snow. He was taken to a hospital where he died three hours later.

Petitioner and an interne at the hospital testified that Mr. Shewczuk said he thought the bottle contained drinking water and that after he drank it he thought it was alcohol because it burned his throat. The cause of death as certified to by the medical examiner was "suicidal by drinking sulphuric acid, Jealousy."

Defendant uses sulphuric acid in its dyehouse. The acid comes in a twelve gallon bottle and is enclosed in a strong wooden box. The stopper in the bottle is removed with difficulty as it is cemented and wired into place. There were twelve carboys of acid in the mill yard at this time. The deceased knew of the use of the acid in the dyehouse as he had worked there. On one occasion he had assisted in removing some acid which had been spilled and had asked for rubbers to protect his shoes.

Defendant's employees obtained their drinking water from a small metal tank on a shelf in the finishing room next to the outside door. When the tank was empty any employee was privileged to fill it by taking a pail and going to a near-by well. The deceased knew of this custom of procuring drinking water.

Petitioner claims that her husband's death was caused by a mistake incidental to his work; that the evidence shows he went to get a glass of water from the water tank and found it to be empty and that he thought the carboy contained water to be used in refilling the water tank.

The Superior Court found as a fact that the drinking of the sulphuric acid by the deceased was not occasioned by his mistake and that petitioner failed to prove that his death resulted from an accident within the meaning of the Workmen's Compensation Act or from a risk arising out of his employment.

Petitioner's attorney states in his brief that the question to be considered is whether the deceased drank the acid believing it to be drinking water or whether he knew it to be poison and intended to commit suicide. He argues that, because the trial justice said that suicide had not been established to his satisfaction, he should have found that the deceased drank the acid by mistake. The question as stated is too broad. The question is not whether Mr. Shewczuk intended to commit suicide but whether his death resulted from injury "sustained by accident" . . . "arising out of and in the course of his employment." §1205, G. L. 1923.

Mr. Shewczuk's duties did not require him to go outdoors and open the bottle containing the sulphuric acid. He did not open the bottle by mistake. He did just what he intended to do. He was in such haste to accomplish his purpose that he broke off the neck of the bottle instead of taking time to remove the stopper in a careful manner. When a person does what he intends to do it cannot be said

to be an accident. Mr. Shewczuk's employment was in the finishing room and he was not required to handle the acid. He knew of the custom of employees to procure drinking water at the well when the water tank was empty. There is no evidence that defendant ever furnished bottled water for its employees. The evidence shows no causal connection between the employment of the deceased and his intentional and forcible opening of the bottle of acid. In *Blair* v. *State Ind. Accident Com.*, 288 Pac. (Ore.) 204, it appeared that Blair died from typhoid fever contracted by drinking water from a river over which his employer was constructing a bridge. He had his choice of drinking city water or untreated river water. It was held that his drinking the river water was no part of his work and did not arise out of his employment.

The leading case cited by petitioner is that of *Archibald* v. *Compensation Commissioner*, 77 W. Va. 448. The case is not in point because it was admitted that Archibald's death was accidentally occasioned by drinking a poisonous fluid from a bottle which he believed to contain drinking water, while in the case at bar, the trial court found that Shewczuk did not drink the acid by mistake.

We have carefully examined the evidence and find no error in the findings of fact contained in the decree. In the absence of fraud such findings are conclusive. §1243, G. L. 1923. *Jillson* v. *Ross*, 38 R. I. 145. Petitioner had the burden of proving the material facts alleged in her petition—*Gorral* v. *Hamlyn & Son*, 38 R. I. 249; *Jacquinet* v. *Woonsocket Spinning Co.*, 52 R. I. 247—and failed to do so.

The appeal is dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court.

*John R. Higgins*, for petitioner.

*Gardner, Moss & Haslam, W. Vincent Sumpter, Charles R. Haslam*, for respondent.