JOHN ROSA *vs.* GEORGE A. FULLER COMPANY *et al.*

JUNE 25, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J.  This petition for workmen's compensation was filed in the office of the director of labor on September 27, 1945, more than two years after the happening of the accident which caused petitioner's injury, but within two years after it first incapacitated him from earning full wages. Upon a hearing *de novo* in the superior court upon petitioner's appeal from a decision of the director of labor, and after respondents had concluded their cross-examination of the petitioner, they moved to dismiss his petition because it was not filed "within 2 years after the occurrence of the injury" as is required by general laws 1938, chapter 300, article III, §17.  That court granted the motion and entered its decree denying and dismissing the petition on such ground.  From that decree the petitioner has appealed to this court.

On February 15, 1943 petitioner twisted his right knee and "ripped the cartilage" while working for respondents. He reported the accident to their doctor who gave him a "stocking" to wear on the knee.  Apparently this did not help him and X-ray photographs were taken of the knee. He was then sent by respondents' insurer to Dr. Crane who, after examining petitioner and the X rays, told him that he would need an operation.  Petitioner agreed to undergo it but asked that it be postponed until the winter-

time.  It was then the summer of 1943.  During all this time petitioner had been working at his regular work earning full wages, although he testified that his knee "hurt like the dickens."  He saw Dr. Crane three or four times but apparently nothing was done by respondents to furnish petitioner with surgical and hospital services.  Petitioner testified that they could not get a bed for him in a hospital.  Finally his injury compelled him to stop work on September 21, 1945.  After waiting further until September 27, 1945 for the respondents to act he brought the instant petition for compensation.  He testified that he is still willing to submit to an operation.

On those facts did the superior court err in finding that such petition was filed more than two years after the occurrence of his injury within the meaning of art. III, §17?  As the facts are undisputed, the construction of that section is the sole question raised by petitioner's appeal.  Involved in the determination of that question, however, is a subsidiary question, namely, should such section be given a liberal or a strict construction?  The justice of the superior court said from the bench in granting respondents' motion: "I must construe the statute rigidly."  This court, in an unbroken line of decisions involving various sections of our workmen's compensation act, has held that it is remedial and that its provisions "should be construed broadly and liberally in order to effectuate their purpose," and also in order to extend their benefits "to the largest number of employees." *Donahue* v. *Sherman's Sons Co.,* 39 R. I. 373; *Lopes* v. *B. B. & R. Knight, Inc.,* 50 R. I. 16; *LaCroix* v. *Frechette,* 50 R. I. 90; *Martin* v. *Silvertown Garage,* 54 R. I. 388; *Condon* v. *First National Stores, Inc.,* 65 R. I. 129.  In the last-cited case we said in applying that rule of construction: "No construction, particularly of a remedial statute, should be adopted which would defeat its evident purpose."

There can be no doubt as to the purpose of our act.  Its primary object is to provide economic aid to the employee who is injured and *suffers loss of earnings* as a result of

accident arising out of and in the course of his employment, without regard to negligence on his part or on the part of his employer. *Hingeco Mfg. Co.* v. *Haglund,* 65 R. I. 218. Secondarily it was intended to impose upon the employer the burden of taking care of the casualties occurring in his employment and thus to relieve the public of bearing such burden out of the public revenues. *Carpenter* v. *Globe Indemnity Co.,* 65 R. I. 194. Probably for that reason this court said in *Sayles* v. *Foley,* 38 R. I. 484, that such legislation was "a matter affecting the public welfare," and in *LaCroix* v. *Frechette, supra,* that it should be liberally construed to fulfill its purpose. A strict construction of §17 would, in our opinion, tend to defeat such purpose. We see no reason why that section should not receive the same liberal construction that this court has so frequently given to other provisions of the act.

The word "injury" in that section may reasonably be open to two constructions. It may be construed to mean "accident" or to mean "injury" which incapacitates the employee from earning full wages. When read in the light of the language of art. II, §§4, 10 and 11, which provide payments for injury sustained by the employee, the second construction appears the more reasonable one. It is certainly not clear that the legislature must have used "injury" in the sense of "accident" in §17, as respondents contend. If such was the legislative intent it is difficult to understand why the word "accident" was not used as it has been in the statutes of other states. In those states the courts have declined to read that word as meaning "injury." Those courts have held under such statutes that the claim for personal injury arises simultaneously and is complete with the happening of the accident; that the accident gives rise to the cause of action; and that the limitation applies thereto and not to the extent of the injury. *Lewis* v. *Carnegie-Illinois Steel Corp.,* 159 Pa. Super. 226. See also *Murphy* v. *Cook Construction Co.,* 130 Kan. 200; *White* v. *United States Fidelity & Guaranty Co.,*

41 Ga. App. 514. Whatever may be said of that view of a statute which expressly provides that the date of the *accident* shall mark the beginning of the running of the limitation, we think that it would be incorrect to apply it to the word "injury" in our statute.

The use of the word "injury" by our legislature calls for a construction of the word consistent with the purpose of the act. There is a recognized difference between the words "injury" and "accident" as the Pennsylvania superior court pointed out in the *Lewis* case, *supra*. In a Wisconsin case construing the statute of that state the supreme court stated that "Injury and compensable disability are more in the nature of synonymous terms than are date of injury and date of the accident." *Acme Body Works* v. *Industrial Comm'n*, 204 Wis. 493. That injury is equivalent to accident in the federal longshoremen's compensation act has also been rejected by the United States court of appeals for the District of Columbia. *Potomac Electric Power Co.* v. *Cardillo*, 107 F.2d 962. And that view, it was said in *Di Giorgio Fruit Corp.* v. *Norton*, 93 F.2d 119, is according to the weight of authority in the state courts. The Indiana appellate court is of the same opinion. *Farmers Mutual Liability Co.* v. *Chaplin*, 114 Ind. App. 372. Abundant and respectable authority, therefore, treats the word "injury" in a statute of limitation on claims for compensation similar to our §17 as referring to the time when the injury becomes compensable and not to the time of the accident.

That view, in our opinion, is also based upon sound reason. In support of that statement we shall quote briefly what some courts have said on the question. The Utah supreme court, overruling a contrary view which it had long held, said in *Salt Lake City* v. *Industrial Comm'n*, 93 Utah 510: "Holding that the statute begins to run from the time of accident instead of from the time of compensable disability or loss, in effect makes the statute begin to run before the cause of action accrues. In negligence cases the cause of action arises from the negligence which

causes the accident and therefore the statute begins to run from the time the negligence operated on plaintiff, which would be at the time of the accident. But no such rule applies in compensation cases. Compensation does not depend upon negligence." The court went on to point out that the cause of action for compensation does not arise until the loss of earnings is suffered.

In Connecticut, where the statute provided that claim for compensation should be made within one year from the date of the injury, it was held that this meant when the injury became compensable and that any other construction would be out of harmony with the beneficent purpose of the act. The court emphasized that the act did not provide any compensation until the employee was incapacitated from earning full wages for more than seven days. "Until such period of incapacity has passed, no enforceable claim for compensation has accrued, and no claim for compensation could be made." *Esposito* v. *Marlin-Rockwell Corp.*, 96 Conn. 414.

In the state of Maine like reasoning was the basis of the decision in *Hustus' Case*, 123 Me. 428. Of a statute containing a limitation almost exactly like ours the court said: "A workman is incapacitated within the act when he has lost his earning power in whole or in part. This is the only test. The law provides no compensation for pain and none for physical impairment, except when it is of such character as to raise a presumption of incapacity to earn. * * * The workman is entitled to make a claim for compensation not for mere injury, but for accidental injury resulting in loss of earning power." Until such loss occurred the statute of limitation did not begin to run because, the court observed, until then the workman suffered no compensable injury. See also *Fogg's Case*, 125 Me. 524, and *Guthrie* v. *Mowry*, 134 Me. 256, which reaffirm and follow *Hustus' Case*.

The Maryland court of appeals in similarly construing the statute in that state said, in *Baltimore Steel Co.* v.

*Burch,* 49 A.2d (Md.) 542, that there are instances "* * * where the injury at the time of the accident is not apparent, but is latent and appears so slight, if any, that the workman continues work, loses no time or wages until after one year has run from the date of the accident. In such cases the man is injured but does not suffer a compensable injury." The court there held that since the injury was not compensable at the time of the accident the statute of limitation could not begin to run at that time.

In Indiana the statute barred compensation unless a claim therefor was filed "within two years after the injury." In *Laffin* v. *Bendix Aviation Corp.,* 66 N.E.2d (Ind.) 625, the court said that it was firmly established by its decisions that the word "injury" meant compensable disability and did not refer to the date of the accident which resulted in such disability. In a more recent Indiana case it was held that "where the disablement or compensable injury does not occur simultaneously with the accident producing it the claim for compensation may be filed within two years after the resulting injury develops or becomes apparent * * * ." *International Detrola Corp.* v. *Hoffman,* 70 N.E.2d (Ind.) 844.

The Oklahoma supreme court, in *Brown & Root, Inc.* v. *Dunkelberger,* 196 Okla. 116, adopted a liberal construction of its statute of limitation in favor of the injured workman. There the employer's doctor told him that his injury though painful was not serious and he continued to work, but later was found to be 20 per cent disabled. In rejecting the employer's contention that the workman's claim for compensation was barred for failure to file within the time limited after the injury the court said that "where the injury is of such a nature that its lasting effect is not easily ascertained, and it seems trifling, but later develops, or is found to be of a permanent nature," the statute "does not begin to run until the disability is disclosed and becomes apparent."

In California it was held in *Colonial Ins. Co.* v. *Industrial*

*Accident Comm'n,* 27 Cal.2d 437, that the statute of limitations in the act was to be construed liberally like the other provisions thereof so that the beneficent features of the act should not be lost to employees. Where provisions are susceptible to an interpretation either beneficial or detrimental to the injured employee the court stated that they must be construed favorably to him.

In *Potomac Electric Power Co.* v. *Cardillo, supra,* the employee was struck on the head by the metal end of an air hose on May 24, 1935. He was hospitalized and returned to work within a week. He filed no claim because there was a waiting period of at least seven days before an injury became compensable. He worked steadily until November 16, 1936. Thereafter he worked very little. In the spring of 1937 he consulted a psychiatrist who advised him that he was suffering from a progressive brain disease which was caused by the blow on the head from the air hose. He filed his claim on August 18, 1937, more than two years after the accident but within less than a year from the time he first began to lose work or from the time he first knew the nature of his disability. The court held that it was the intent of the act that the period of limitation on the filing of claims should begin to run from the time the injury became disabling and that an opposite intent should not be imputed to Congress, as it had provided a limitation for death claims of one year after death and not after the accident which caused death. The court said no reason appeared for holding that disability claims should in this respect be treated differently.

This discussion of a few of the many cases which have adopted the view that the statute begins to run from the date when the injury first became compensable illustrates the rational basis upon which such a construction largely rests. The question in the case at bar is whether we can consistently adopt a similar construction of §17 of art. III of our act without doing violence or creating confusion with respect to the meaning of other sections of the act

wherein the word "injury" is used. If we understand respondents' position correctly it is that such construction cannot be adopted without importing such confusion into the act. It is perhaps for that reason they have relied so strongly in their brief and argument here on an analysis of our act rather than on the citation of cases *contra* to those discussed above which support the petitioner's contention. Indeed they frankly assert, after citing 108 A. L. R. 316 Anno., and 71 C. J. 108, §794, "that the issue involved in this case may best be determined by an examination of the provisions of the language of our Statute itself, and of the cases decided thereunder, and for this reason no further reference will be made to the conflict of authorities which exists elsewhere."

We shall not discuss in detail each section of the act containing the word "injury" the meaning of which respondents contend will be altered or destroyed if the petitioner's construction of "injury" in art. III, §17, is adopted. To enter upon such a discussion is not necessary to the determination of the precise question before us. We are now concerned only with §17. Unless the construction contended for by the petitioner does violence to the whole spirit and purpose of the act, or would make unworkable the vital sections thereof, it may be adopted, even though it may be necessary to construe the word "injury" in some other section as relating to the occurrence of the mere physical injury rather than to the time it becomes incapacitating. However, we shall hereinafter discuss a few of what we deem the vital sections of the act to show what the legislature intended by its use of the word "injury" therein.

First, let us take §4, art. II, as amended by P. L. 1941, chap. 1055, which reads as follows: "No compensation except as provided by section 5 and section 12 of this article shall be paid under this chapter for any injury which does not incapacitate the employee for a period of at least 3 days from earning full wages, but, if such incapacity extends beyond the period of 3 days, compensation shall begin on

the fourth day from the date of injury; *provided, however,* that if such incapacity extends beyond the period of 2 weeks, compensation shall begin from the date of the injury." Here the respondents argue that the words "injury" and "incapacity" mean different things, and since incapacity is synonymous with disablement, injury cannot mean disablement. But let us leave the syllogism for a moment and examine more closely the language of the section. Fundamentally, it defines or describes the kind of an injury which is compensable; it explicitly states when it shall become so, namely, when it incapacitates the injured employee for at least three days from earning full wages. In other words, injury in this section is restricted to and means only an incapacitating injury. The words "incapacity" and "incapacitate" are used throughout the section to thus limit the word "injury."

Only an injury which results in actual loss of earning capacity is within the contemplation of the act, except specific injuries enumerated under art. II, §12, which are presumed to result in some incapacity and are specially compensated for without regard to actual present loss of earning capacity. And under §5 of the same article the act provides for payment of hospital, medical and other like expenses incurred in treating and curing the employee's injury. Under that section the employer is obligated to furnish the employee such services whether or not the injury incapacitates him from earning full wages, and, where the injury is not incapacitating, the section expressly authorizes the director of labor, on his own motion, to order the employer to furnish such services, if he neglects to do so. By this section the legislature has made two things clear: first, that the occurrence of an injury as described in §4 is not necessary to entitle the employee to those services at the expense of his employer; and, second, that if the employer does not furnish them in such a case he may be ordered to do so without any action by the employee but upon the director of labor's own motion. Here the

legislature itself differentiates the injury for which this special remedy is provided from that described in §4 which entitled the injured employee to compensation.

The compensation provided for in that section is further classified by §§10 and 11 of art. II, in two categories, total and partial. And again in those sections the legislature uses language to show that it is not merely physical injury but disabling injury for which it is provided that the employer shall pay compensation. That language is: "While the *incapacity for work* resulting from the injury is total," (§10) or "is partial" (§11). (italics ours) Respondents argue that such language shows that the legislature did not use the word "injury" to mean disability. Of course not, but plainly it was adhering to the formula it had prescribed by identical language in §4 for determining the employee's right to compensation, namely, that as long as the injury was one which incapacitated him in whole or in part from earning full wages he was to be paid compensation therefor at a specified rate. In other words, in these sections as in that one the legislative language is to be read as descriptive of the kind of injury which is made compensable by the act.

Undoubtedly there may be sections of the act where the legislature has used the word "injury" as a synonym for accident, but if that be so it does not necessarily follow that we must give that construction to the section now before us, especially if such a construction would be inconsistent with the sections of the act defining compensable injuries, or would defeat the beneficent purpose of the act. Whether or not the word "injury" was used in those instances in the sense of accident may better be left to such time as the question becomes necessary to determine.

This court has consistently held that our act "is only intended to furnish compensation for loss of earning capacity. Without such loss there is no provision for compensation in the section, although even permanent physical injury may have been suffered * * * ." *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309, 315; *Ruggiero* v. *Brown &*

*Sharpe Mfg. Co.*, 71 R. I. 178; *Wareham* v. *United States Rubber Co.*, 73 R. I. 207; *Brown & Sharpe Mfg. Co.* v. *Vincent*, 73 R. I. 309. In accord with that view we must hold that an employee who has received an injury by accident, which does not incapacitate him from earning full wages for at least three days and which is not of the specific kind that is specially compensable under art. II, §12, has no cause of action against his employer unless and until his injury thereafter results in such incapacity, at which time the period of two years within which he is required by art. III, §17, to file an agreement or a petition for compensation begins to run.

A contrary construction would defeat the evident purpose of the compensation act and leave an injured employee without a remedy for an injury admittedly received by accident arising out of and in the course of his employment, but where the incapacitating effect of the injury manifested itself too late to afford him an opportunity to claim compensation. We do not believe that the legislature intended any such result. If they had so intended it seems to us they would have undoubtedly used the unambiguous word "accident" rather than the word "injury" in §17.

Respondents argue that, in numerous opinions, this court has used language which clearly indicates that we assumed that the words "accident" and "injury" appearing in various sections of the act were synonymous. It is only fair to say that in the language which they quote from the cases that they cite, this court was not called upon to distinguish the meaning of those words nor did we undertake to do so. Respondents frankly concede that the court has never squarely passed on the question. Although it was presented in *Rachiele* v. *Fuller Co.*, 71 R. I. 446, it was unnecessary to decide it because another point was decisive of the case. However, they point out that in that case the superior court construed the statute in the same way as it did in the case at bar, and that such

construction, as far as they have been able to ascertain, has been consistently followed by that court. Based upon such research respondents seem to argue that this court should not disturb such a uniform practice which they apparently suggest has long been acquiesced in by the bar.

If such has been the uniform practice of the superior court it is entitled to the serious consideration of this court, but it is not controlling. We are not certain, however, that that court has always so interpreted the act. It would seem from a decision by Tanner, P. J., summarized by this court in *Dunn* v. *United Lace & Braid Mfg. Co.*, 164 A. (R.I.) 329 (1933), that such justice of the superior court assumed that the statute began to run from the date the employee's injury became disabling and not from the date of the accident.

In that case the accident happened on July 7, 1926 and resulted in an injury to the employee's foot for which compensation was paid. On April 30, 1930 the employee filed a petition for compensation for an injury to his head which was alleged to have resulted from the same accident. The superior court found that he had traumatic epilepsy as a result of his head injury and that it occurred on or about December 1, 1927 and became total in February or March 1928. It further found that the employee knew sometime in the fall of 1926 that he was having spells which were due to his head injury but did not know that he was suffering from traumatic epilepsy until February 1929.

In that case it was contended by the employer, under art. II, §17, as it then stood, that the employee had not made a claim for compensation within a year after the occurrence of his injury. The superior court found that the employee was excused from giving notice of his head injury in accordance with that section because the employer had knowledge of the accident of July 7, 1926 but that he was not excused from making claim for compensation. The superior court denied his petition, however, because

he did not claim compensation "until much more than a year after his knowledge of the cause of his trouble." This court sustained the superior court and said: "The conclusion that plaintiff must have known for some time prior to two years before the filing of the petition that his increasing trouble was due to his accident is unavoidable."

Apparently both the superior court and this court assumed that if the employee in that case had been able to show that he had made his claim for compensation within one year from the time he knew the cause of his head injury and filed his petition within two years therefrom he would have been entitled to maintain proceedings for compensation. In other words, neither court construed the words "occurrence of the injury" in art. II, §17, as it then stood, and in art. III, §17, as meaning "occurrence of the accident." If they had done so it would not have been necessary for them to do more than to say that since the undisputed evidence showed that the accident happened on July 7, 1926 and no claim for compensation for a head injury was made within one year thereafter and no petition for compensation was filed within two years thereafter, the proceedings for compensation were barred. They did not do that but went on to show when the employee first became cognizant of his disability and that it was more than one year thereafter before he claimed compensation and more than two years thereafter before he filed his petition.

We have discussed that case at some length merely because it seems to us to be *contra* to the respondents' contention in so far as the practice of the superior court is concerned. But whatever such practice may be the plain language of art. II, §§4, 10, 11, as well as a liberal construction of the whole act constrains us to hold that the words "after the occurrence of the injury" in art. III, §17, mean after the injury first gives rise to a cause of action against the employer, that is, when it incapacitates the employee from earning full wages for at least three days.

In the case at bar the respondents did not present any evidence but elected to rest on their motion to dismiss. Since they may not be permitted to have their case heard piecemeal we must hold that in the circumstances the facts were as testified by the petitioner, namely, that he became incapacitated from earning full wages on September 21, 1945, and has so continued. Since his petition was filed less than two years thereafter, on September 27, 1945, it was not barred by art. III, §17.

The petitioner's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a new decree awarding petitioner compensation in accordance with law.

*Goldberg & Goldberg, Philip B. Goldberg, George Ajootian,* for petitioner.

*Hinckley, Allen, Tillinghast & Wheeler, S. Everett Wilkins, Thomas J. Hogan,* for respondent.