In the Matter of the Claim of MARTIN K. BURNS, Respondent, against MERRITT ENGINEERING Co. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Argued October 18, 1950; decided January 18, 1951.

*Albert P. Thill* and *Merrill G. Windelberg* for appellants. The accident did not arise out of and in the course of claimant's employment.

*Nathaniel L. Goldstein, Attorney-General (Gilbert M. Landy, Wendell P. Brown* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent. The accidental injuries which claimant sustained arose out of and in the course of his employment. (*Matter of Kleid* v. *Carr Bros.,* 300 N. Y. 270; *Matter of Bollard* v. *Engel,* 278 N. Y. 463; *Matter of Humphrey* v. *Tietjen & Steffin Milk Co.,* 235 App. Div. 470, 261 N. Y. 549; *Matter of McCarthy* v. *Remington Rand, Inc.,* 300 N. Y. 715; *Matter of Verschleiser* v. *Stern & Son,* 229 N. Y. 192; *Matter of Donovan* v. *Bush Term. Co.,* 255 App. Div. 737; *Matter of Levy* v. *World-Telegram Corp.,* 259 App. Div. 943, 285 N. Y. 533; *Matter of Mason* v. *Nassau Riding Academy,* 250 App. Div. 802; *Matter of Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470; *Matter of Industrial Comr. [Siguin]* v. *McCarthy,* 295 N. Y. 443; *Matter of Chanin* v. *Western Union Tel. Co.,* 271 App. Div. 763; *Matter of Wickham* v. *Glenside Woolen Mills,* 252 N. Y. 11; *Matter of Comr. of Taxation & Finance [Callahan]* v. *Bronx Hosp.,* 276 App. Div. 708.)

Dye, J. The sole question posed on this appeal is whether the claimant's disability for which he has been awarded workmen's compensation benefits arose out of his employment,

there being no question that the incident giving rise to the injury occurred on the employer's premises during working hours.

The facts are these: At five minutes before quitting time on Saturday, October 13, 1947, and before he had checked out, the claimant, a machinist employed in the machine department of the employer's plywood factory, went to the electrical department for the purpose of getting an automobile ride to his home with one Fothergill, a friend and coemployee. This was a common practice known to the employer. During the conversation Fothergill offered claimant a drink from a bottle containing a clear liquid and labeled " Barclay's Gin ". The claimant, after satisfying himself that the department's " straw boss " who was changing his clothes nearby was not watching, took the bottle, stepped behind a large noisy electrical machine designated as a " DC converter " where he would be concealed from view, unscrewed the cork and drank. The bottle contained not gin as he expected, but carbon tetrachloride, a fact known to Fothergill but deliberately withheld from claimant. Fothergill had obtained the liquid with the employer's permission from the company's supply room for his personal use. Later, while claimant was riding home with Fothergill, he became violently ill. The poisonous liquid did severe damage to his internal organs, resulting in the disability complained of.

Claimant at the time was a member of a labor union, the United States Steel Workers of America, which, in acting as bargaining agent, had negotiated a contract with the employer which read in part, viz.: " possession of or drinking liquor or any alcoholic beverage on company property at any time * * * is forbidden and shall constitute a just cause for immediate dismissal."

The testimony is conflicting as to whether the claimant knew about this rule prior to the accident — the employer adducing testimony that each employee had a copy of the contract and that it was accepted and obeyed by the employees, and that it knew of no violation — whereas the claimant would only admit that he learned about the rule at the hearing. Whether or not he knew about such rule prior to the accident is not determinative of the issue here, which is not whether his act, under the rule warranted dismissal, but whether he should be denied com-

pensation because his injuries did not arise out of his employment. In other words, did his conduct under the circumstances amount to an abandonment of his employment as a matter of law?

It is well established that disregard of the precise terms of employment does not necessarily constitute an abandonment thereof (cf. *Matter of O'Bryan* v. *Town of Jewett,* 296 N. Y. 785; *Matter of Dann* v. *Town of Veteran,* 278 N. Y. 461), nor does violation of a rule not promulgated but which under the circumstances might reasonably be implied, bar compensation benefits (*Matter of Lang* v. *Franklin Ry. Supply Co.,* 272 App. Div. 988, motion for leave to appeal denied 297 N. Y. 1036; *Matter of Currivan* v. *Friesler Realty Co.,* 273 App. Div. 834, motion for leave to appeal denied 297 N. Y. 1033). Viewed in the light of these authorities, a violation — if such there was — of the no-drinking rule under penalty of dismissal, may and should not be treated any differently for purposes of compensation than the violation of any other rule designed to improve plant efficiency and to safeguard employees (cf. *Matter of Chila* v. *New York Central R. R. Co.,* 251 App. Div. 575, affd. 275 N. Y. 585; *Matter of Brenchley* v. *International Heater Co.,* 227 App. Div. 831, affd. 254 N. Y. 536; *Matter of Fox* v. *Truslow & Fulle, Inc.,* 204 App. Div. 584, affd. 236 N. Y. 634).

Here the board has found as a fact, from all the surrounding circumstances, that the injuries arose out of the claimant's employment. The contention of the employer and its insurance carrier that the employee by breaking the no-drinking rule forfeits compensation must be rejected, and he may not be penalized for an intention to do so because he drank from a bottle labeled gin in an expectation that it contained gin. When he unwittingly drank carbon tetrachloride knowingly handed to him by a coemployee — who had it with the employer's permission — he was not injured because he violated a rule of the plant, but, on the contrary, because he was the innocent victim of a cruel and senseless joke. When so viewed the employer is not to be exonerated from the consequences of such an act under a theory that it constituted an abandonment of employment but, rather, he may be held under the theory that the injurious act fell naturally into that category of conduct known to the law as " horseplay ". To be victimized by a prank

perpetrated by a coemployee has long been recognized as an incident of employment, as something reasonably to be expected, a peril of service; an indulgence in a moment's diversion from work to joke with or play a prank upon a fellow workman is a matter of common knowledge to everyone who employs labor (*Matter of Leonbruno* v. *Champlain Silk Mills*, 229 N. Y. 470; *Thom* v. *Sinclair*, [1917] A. C. 127; *Matter of Redner* v. *Faber & Son*, 223 N. Y. 379) and an employee so injured will be allowed compensation benefits if the board is satisfied that the acts were incidental to the employment (*Matter of Industrial Comr.* [*Siguin*] v. *McCarthy*, 295 N. Y. 443; *Matter of Lang* v. *Franklin Ry. Supply Co.*, *supra*; *Matter of Chanin* v. *Western Union Tel. Co.*, 271 App. Div. 763; cf. *Matter of Gaurin* v. *Bagley & Sewall Co.*, 298 N. Y. 511). But when the board is not so satisfied, compensation will be denied (*Matter of Gaurin* v. *Bagley & Sewall Co.*, *supra*; *Matter of Ognibene* v. *Rochester Mfg. Co.*, 298 N. Y. 85). These general principles are equally available here, particularly as it is quite apparent from the evidence that the claimant, although collaborating or participating in the event, was not the instigator thereof but was its innocent victim.

Perhaps it would be well to say also that an award in horseplay cases should not depend on evidence of foreseeability. It is an important element (*Matter of McCarthy* v. *Remington Rand, Inc.*, 300 N. Y. 715), but not necessarily conclusive. To introduce such an arbitrary and anomalous rule hardly seems consonant with the liberal policy incident to the administration of the statute. The test is whether the injurious horseplay may reasonably be regarded as an incident of the employment (*Matter of Leonbruno* v. *Champlain Silk Mills*, *supra*) — rather than the foreseeability of a particular prank — that supports the finding of fact that it arose out of the employment.

Furthermore, the claimant here is in very much the same position as the victim of an unprovoked assault — malicious or friendly — and the principles pertaining thereto are equally pertinent here (*Matter of Levy* v. *World-Telegram Corp.*, 259 App. Div. 943, affd. 285 N. Y. 533; *Matter of Sewell* v. *Johnson Auto Body Shop*, 274 App. Div. 957, motion for leave to appeal denied 298 N. Y. 937; *Matter of Humphrey* v. *Tietjen & Steffin Milk Co.*, 235 App. Div. 470, affd. 261 N. Y. 549; *Matter of*

*Verschleiser* v. *Stern & Son,* 229 N. Y. 192; *Matter of Chanin* v. *Western Union Tel. Co., supra; Hartford Accident & Ind. Co.* v. *Cardillo,* 112 F. 2d 11, certiorari denied 310 U. S. 649).

The order appealed from should be affirmed, with costs.

FULD, J. (dissenting). A company rule forbade the drinking of intoxicating liquor and an agreement between the employer and the union, of which the employees were members, rendered a violation of that rule basis for " immediate dismissal." The rule was, as noted in the court's opinion (p. 133) " accepted and obeyed by the employees," and there is not the slightest evidence either that any employee had ever before taken a drink while on the job, that the employer by word or conduct had ever relaxed the rule, or that it had ever indicated that it would permit drinking on the premises. Under such circumstances, it passes understanding to hold that an employee, who furtively accepts a drink, *believing it to be gin,* is entitled to compensation because the fellow employee, who offered him the drink, endowed with a cruelly perverted sense of humor, had filled the proffered bottle with poisonous carbon tetrachloride.

Our inquiry here, as in all workmen's compensation cases, is whether the injury arose out of — as well as in the course of — the employment. In the case before us, there is no suggestion that the drinking was done, even in the remotest or most far-fetched sense of the term, in the course of any assigned job, or that it was a *permitted* incidental diversion which the employer had knowledge of and had impliedly adopted through sufferance or acquiescence. Here, claimant's act — and it is important to bear in mind that he could never have become the victim of the prank in question until and unless he first performed that act — was just as far removed from the scope of his employment as it would have been had he become ill from drinking bad liquor from a bottle which he himself had brought into the factory, in violation of a company rule, to assuage his thirst with an occasional nip. Surely, no one could possibly claim that the employee was entitled to compensation in such a case merely because the drinking had occurred in the factory during working hours. (See *Elliot* v. *Industrial Accident Comm.,* 21 Cal. 2d 281, 284.) In the California case, Elliot, having become ill during working hours, took a drink — " as * * * medica-

tion '' — from a bottle which he believed held wine, though in fact it contained carbon tetrachloride. Although the court upheld the ensuing award, it was at pains to caution that the result would have been different if the employee had taken a drink '' of intoxicating liquor for the mere satisfaction of a desire therefor * * * rather than * * * for medicinal purposes '' (21 Cal. 2d, *supra,* at p. 284).

It does not end our task to declare that the employee was the victim of prank or horseplay, for, if, when the injury occurred, he had stepped out of his working environment, had abandoned his employment, in order to indulge in an extra-employment caper or activity, it would necessarily follow that his injury neither arose out of his employment nor resulted from a risk of that employment. (See, e.g., *Matter of Ognibene* v. *Rochester Mfg. Co.,* 298 N. Y. 85, 87; *Matter of Gaurin* v. *Bagley & Sewall Co.,* 298 N. Y. 511; *Matter of Industrial Comr.* [*Siguin*] v. *McCarthy,* 295 N. Y. 443, 446–447; *Matter of Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470, 472–473.) That being so, all relationship to the prank and horseplay cases is obliterated, any reliance upon them misplaced. In any event, though, whether the claimant's extra-employment activity is to be deemed an incident of employment depends in large measure upon whether it has been regularized by long indulgence, upon whether there has been '' continuity of practice — conduct which has gained acceptance ''. (*Matter of Ognibene* v. *Rochester Mfg. Co., supra,* 298 N. Y. 85, 87; see, also, *Matter of McCarthy* v. *Remington Rand, Inc.,* 300 N. Y. 715; *Matter of Gaurin* v. *Bagley & Sewall Co., supra,* 298 N. Y. 511; *Matter of Industrial Comr.* [*Siguin*] v. *McCarthy, supra,* 295 N. Y. 443, 446–447; *Matter of Leonbruno* v. *Champlain Silk Mills, supra,* 229 N. Y. 470, 472–473.) Thus, in affirming an award for compensation in the *McCarthy* case (*supra,* 295 N. Y. 443), we stressed the '' long-continuing custom and practice '' of the conduct there involved and the '' continued series of related and similar incidents participated in by all the employees '' (p. 447), and, in the *Remington Rand* case (*supra,* 300 N. Y. 715), where the employee took a drink of carbon tetrachloride at a New Year's party held in the factory, under the belief, also induced by a practical joker, that it was whiskey, we upheld the award solely upon the ground that the

evidence was ample to sustain the finding that the employer, knowing that the drinking of intoxicating liquor occurred at such parties, sanctioned the practice and, by that token, transformed such drinking and its attendant consequences into risks of the employment.

We have seen that here the case was entirely different. The record establishes that there never before had been any drinking in the factory — this being '' *a single isolated incident* which originated solely and entirely in the injured employee's own act '' (*Matter of Industrial Comr.* [*Siguin*] v. *McCarthy, supra,* 295 N. Y. 443, 447) — and the employer had never permitted, or even intimated that he would have permitted, such conduct. There is no escape from the conclusion that, when claimant was injured, he had deliberately abandoned his employment in order to indulge in an activity entirely unrelated to his work — and the employer's rule against drinking forcefully points up and accentuates the fact of such abandonment.

I am not suggesting that the violation of every company rule disqualifies an employee from compensation for resulting injuries. Some rules, such as those prescribing work routines or protective devices, are designed expressly for the individual employee's personal protection, and it would frustrate the very purpose and aim of the Workmen's Compensation Law to hold that a violation of that type of rule removed the employee from his employment. (See, e.g., *Matter of Corrina* v. *De Barbieri,* 247 N. Y. 357; *Capital Tr. Co.* v. *Hoage,* 84 F. 2d 235; *Oklahoma Ry. Co.* v. *Cannon,* 198 Okla. 65.) Not so, however, where the rule, such as the one before us, is obviously designed to protect not only the violator but his fellow employees whose safety is dependent upon his careful and sober operation of machinery or other equipment. It impresses me as principle turned topsy-turvy to sanction payment· of compensation to an employee who performs — or believes that he is performing — an act that calls for summary dismissal.

The order appealed from should be reversed and the claim dismissed.

LOUGHRAN, Ch. J., CONWAY and FROESSEL, JJ., concur with DYE, J.; FULD, J., dissents in opinion in which LEWIS and DESMOND, JJ., concur.

Order affirmed.