366 A.2d 157.

LUCINDO CARVALHO *vs.* DECORATIVE FABRICS CO.

DECEMBER 1, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris,, JJ.

BEVILACQUA, C. J. This is an employee's original petition for compensation under the Workmen's Compensation Act. The trial commissioner denied and dismissed the petition and this action was affirmed by the full commission. The case is before us on appeal from the decree entered denying and dismissing the employee's petition.

The petitioner worked in respondent's factory as a "flock-boy." His duties consisted of handling and working with yarn. At the end of a work shift it was customary for fellow employees to assist each other in removing the lint and yarn which accumulated on their clothing by use of an airhose. On the particular day in question, February 25, 1974, a fellow worker, while cleaning the yarn from petitioner's clothing, placed the airhose in the vicinity of petitioner's rectum causing petitioner to be knocked to the floor.

On the following evening, petitioner began suffering severe pain and discomfort and was taken by a friend to the emergency room of the Pawtucket Memorial Hospital. There he was examined by a physician who diagnosed the injury as a perforated rectum. As a result of

this injury, petitioner was unable to work from February 26, 1974, to August of that same year.

The petitioner testified that at the time the incident occurred he had a slight tear in his pants. He was standing upright and a fellow employee, as was customary, was cleaning the lint off his back with an airhose. The petitioner felt a little pressure, his stomach blew up and he fell to the floor. He further testified that his fellow employee stated that it was "an accident" and that he "was sorry."

There was also testimony from Dr. Eugene E. Healey who stated that it was not necessary for the airhose to be inserted into the rectum but that the flow of air that emanated therefrom would have been sufficient to cause the injury.

The commissioner admitted, without objection, the emergency room admission records containing a statement made by the friend of petitioner who brought him to the hospital that "* * * they were fooling with an airhose at work yesterday and someone stuck [an air] hose up his rectum."

The commissioner found that petitioner was involved in "horseplay" and "assault"; that consequently the injuries did not arise out of and in the course of his employment and thus were not compensable. The full commission affirmed the commissioner's findings on the ground that "there was some degree of 'horseplay' involved in the circumstances" leading up to petitioner's injury.

The petitioner argues that an employee who is injured as a result of "horseplay" is entitled to compensation where the injury arose out of and in the course of his employment.

The respondent, in turn, contends that injuries resulting from "horseplay" are not compensable.

Since the full commission denied compensation solely on the ground that "horseplay" was present, it made no finding as to whether petitioner was an "innocent victim" or a "participant" in the "horseplay." In addition, there was no finding as to whether a causal connection between the injury and the employment was established.

In the early workmen's compensation cases involving "horseplay" (sometimes referred to as "sportive assault," "larking" or "skylarking") courts were reluctant to award compensation, even to the innocent, nonparticipating victim. Reasoning that employees were hired to work and not to play, courts concluded that injuries resulting from "horseplay" did not arise out of and in the course of employment. In addition, courts denied compensation sustaining the defense that the claimant was a "participant" in or "instigator" of "horseplay." However, these decisions are contrary to the scope and intent of the Workmen's Compensation Acts. These Acts were designed to provide compensation to victims of work-connected injuries and to eliminate the tort defenses of negligence and fault.[1] In effect, these early decisions judicially reinstituted common law defenses which had been abolished by statute.

Later courts recognized that the primary purpose of workmen's compensation is to provide economic assistance to an employee who is injured and thereby suffers a loss of earnings; such legislation "* * * was intended to impose

---

[1]*See e.g.,* G. L. 1956 (1968 Reenactment) §28-29-3 which abolishes the defenses of contributory negligence, negligence of a fellow employee, and assumption of risk.

The only time our statute specifically denies recovery is when injury or death results from "intoxication" or "wilful intent" to bring about injury or death. Section 28-33-2. *Collins* v. *Cole,* 40 R. I. 66, 99 A. 830 (1917); *Shewczuk* v. *Contrexeville Mfg. Co.,* 53 R. I. 223, 165 A. 444 (1933). On the evidence before us there is nothing to indicate that petitioner was guilty of wilful intention to bring about harm to himself or another or that the injury resulted from intoxication.

upon the employer the burden of taking care of the casualties occurring in his employment, thus preventing the injured employee from becoming a public charge." *Geigy Chem. Corp.* v. *Zuckerman,* 106 R.I. 534, 541, 261 A.2d 844, 848 (1970); *accord, Rosa* v. *George A. Fuller Co.,* 74 R.I. 215, 60 A.2d 150 (1948). Moreover, the worker need no longer be free from fault to receive compensation. *Crilly* v. *Ballou,* 353 Mich. 303, 308, 91 N.W.2d 493, 496 (1958). Decisions and commentaries on the issue of "horseplay" in workmen's compensation cases have taken the position that injuries are compensable for the "participant" as well as the "innocent victim" under certain conditions. *Crilly* v. *Ballou, supra; In re Leonbruno* v. *Champlain Silk Mills,* 229 N.Y. 470, 128 N.E. 711 (1920);[2] 1 Larson, *Workmen's Compensation Law,* §23.00 et seq. (1972); Horovitz, *Assaults and Horseplay Under Workmen's Compensation Laws,* 41 Ill.L.Rev. 311 (1946).

Since the commission made no finding as to whether petitioner was an innocent victim of the horseplay or a participant, we must address the issue of whether a claimant in either situation can recover.

## I.

In the case of the victim who does not participate in the "horseplay" and is innocent of any wrongful conduct, we need no extended justification to hold that the injuries received are compensable. In *In re Leonbruno* v. *Champlain Silk Mills, supra,* the late Mr. Justice Cardozo stated:

> "The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions

---

[2] See also recent cases following this decision by Mr. Justice Cardozo, *In re Burns* v. *Merritt Eng'r Co.,* 302 N.Y. 131, 96 N.E.2d 739 (1951); *In re Industrial Comm'r* v. *McCarthy,* 295 N.Y. 443, 68 N.E.2d 434 (1946).

were risks of the employment."[3] *Id.* at 472, 128 N.E. at 711.

When people are placed together and are in close association with one another in performing their work there is a natural instinct to fool around and play pranks on one another. Such activity is part of the work environment, an incident of the employment. The claimant need only establish that the injury arose out of and in the course of employment; a nexus or causal connection between the injury and the employment must be shown. *Montanaro* v. *Guild Metal Prods., Inc.,* 108 R.I. 362, 275 A.2d 634 (1971); *Bergeron* v. *Kilnic Co.,* 108 R.I. 313, 274 A.2d 753 (1971); *Boullier* v. *Samsan Co.,* 100 R.I. 676, 219 A.2d 133 (1966). In *Lima* v. *William H. Haskell Mfg. Co.,* 100 R.I. 312, 215 A.2d 229 (1965), we stated that the existence of the nexus depended upon

> "* * * whether the injury occurred within the period of employment at a place where the employee might reasonably have been and while he was either reasonably fulfilling the duties of his employment or doing something incidental thereto or to the conditions under which those duties were to be performed." *Id.* at 314, 215 A.2d at 230.

## II.

Since the commission made no finding as to whether petitioner was an innocent victim or a participant in "horseplay," we must decide whether he could recover in the latter instance.

The injured claimant should not be denied compensation merely because of his participation in "horseplay." As the court in *Maltais* v. *Equitable Life Assur. Soc'y of the United States,* 93 N.H. 237, 40 A.2d 837 (1944) stated:

---

[3] In *In re Leonbruno* v. *Champlain Silk Mills,* 229 N.Y. 470, 128 N.E. 711 (1920), the claimant, while engaged in the performance of his duties, was struck by an apple which one of his fellow employees was throwing in sport at another. The claimant lost the sight of an eye. The court held the injury compensable.

"* * * to hold that an injury arises out of the employment if it is inflicted on a workman attentive to duty by the sportive conduct of a fellow-employee, but that it does not so arise if the injured workman participates, however slightly, in the sport is to draw a distinction based on the injured workman's fault, when the only faults specifically named in the statute as precluding recovery are intoxication, violation of law, and serious or wilful misconduct."[4] *Id.* at 242, 40 A.2d at 840.

As in the case of the innocent victim, there must be a nexus between the injury and the employment. The basic inquiry should focus on whether or not the "horseplay" is part and parcel of the work environment; the "horseplay" must be substantially motivated by influences that originated in the employment.

Clearly, where horseplay has become customary, a participant can recover since his act is an incident of the work environment. However, where there is no evidence that "horseplay" is customary, the issue is whether the "horseplay" constituted a substantial deviation from the employment. The substantiality of the deviation should be determined not by the seriousness of the resulting injuries but solely by the extent to which the "horseplay" constitutes a departure from the course of the employment. I Larson, *Workmen's Compensation Law,* §23.63 (1972).

Where the use of an airhose to clean off clothes is a daily practice, play with the hose is a risk of the employment and part and parcel of the working environment. Such activity should be regarded as part of the course of employment, particularly where, as in the instant case, the employer places in the hands of the employee the instru-

---

[4]In *Maltais* v. *Equitable Life Assur. Soc'y of the United States,* 93 N.H. 237, 40 A.2d 837 (1944), two workers, while cleaning each others' clothes off with an airhose, began fooling around with it, causing claimant's death. Although claimant participated in the "horseplay," compensation was awarded.

mentality which was used in the "horseplay" and caused the injury.

In a similar case involving horseplay with an airhose, the New York Appellate Division, stressing the brevity of the deviation from employment and awarding compensation stated:

> "It is entirely reasonable and natural that workers will indulge in momentary diversion to play a prank. When it is accomplished on the employer's premises, with a temporary instrumentality furnished by the employer and readily available, it becomes a risk of the employment and part and parcel of the employment." *Piatek* v. *Plymouth Rock Provision Co.*, 15 A.D.2d 405, 406, 224 N.Y.S.2d 634, 635-36 (1962).

Based on the foregoing, we conclude that this case should be remitted to the Workmen's Compensation Commission for further hearing and findings of fact designed to establish whether the requisite nexus exists.

The employee's appeal is sustained, the decree appealed from is vacated, and the cause is remanded to the Workmen's Compensation Commission for further proceedings in accordance with this opinion.

Mr. Justice Paolino, concurring. The only evidence of "horseplay" in this case is a statement which appears in the hospital record to the effect that a friend of the petitioner, who accompanied the latter to the hospital stated "* * * they were fooling with an airhose at work yesterday and someone stuck [an air] hose up his rectum." On the basis of this statement the full commission concluded that it was "satisfied that there was some degree of 'horseplay' involved in the circumstances leading up to" the incident in question. I concur in the majority's decision to remit the cause to the Workmen's Compensation Commission "for further hearing and findings of fact designed to establish whether the requisite nexus exists." However, in view of the great potential for abuse in situations which might

approximate the exclusions specified in the statute, and assuming that the Workmen's Compensation Commission finds the necessary nexus or causal connection between the injury and the employment in this case, I would limit the petitioner's right to compensation benefits to the facts of the instant case.

*Abedon, Stanzler, Biener, Skolnik & Lipsey, Howard I. Lipsey,* for petitioner.

*Charles H. Anderson,* for respondent.