Frank LOMBA

v.

PROVIDENCE GRAVURE, INC.

No. 82–527-Appeal.

Supreme Court of Rhode Island.

Sept. 1, 1983.

John F. McBurney, Pawtucket, for petitioner.

Eldridge H. Henning, Jr., JoAnne McTiernan, Anderson, Henning & Anderson, Providence, for respondent.

## OPINION

SHEA, Justice.

The employer, Providence Gravure, Inc. (Providence Gravure), appeals from a decree of the Workers' Compensation Commission (the commission) awarding disability benefits to the employee, Frank Lomba (Lomba), for an injury that occurred when Lomba raised his left hand in order to touch a fellow employee's beard. We reverse.

On December 18, 1978 Lomba arrived at Providence Gravure with his lunch bag in hand. He punched in and headed for the locker room in order to change his clothes. On his way to the locker room, Lomba encountered a fellow employee by the name of Anthony Costa (Costa), whom he had not seen for some time. When Lomba noticed that Costa was sporting a beard, he raised his left hand, reached for the beard and said, "When are you going to shave it." Lomba had been holding his lunch bag with the hand he raised. Immediately after raising his arm, Lomba grabbed his shoulder and fell to the floor in pain. Costa said he just walked away believing Lomba was "just fooling around * * *." Lomba reported the incident to his supervisor and was taken by ambulance to Miriam Hospital. At the hospital, an X-ray was taken of Lomba's shoulder which revealed no evidence of a recent fracture or dislocation. In his written report, which is in evidence as part of the hospital record, Doctor M.J.

Ryvicker, the radiologist who read the X-ray, stated that his impression was that Lomba was not suffering from any acute ossneosus (bony) injury.

On January 8, 1979, Dr. A. Louis Mariorenzi examined Lomba's shoulder. At the hearing, Dr. Mariorenzi testified that the results of his examination "were normal except [Lomba] had some apprehension when I attempted to abduct and hyperextend the shoulder, which is very common." Based upon his examination, Dr. Mariorenzi concluded that Lomba's shoulder required surgical repair. He also determined that Lomba was incapable of gainful employment. In February, Dr. Mariorenzi operated on the shoulder to correct the problem of recurrent dislocation.

On January 12, 1979, Lomba filed this petition for Workers' Compensation benefits. The trial commissioner found that Lomba sustained an injury to his left shoulder, which "occurred while reaching up with his left arm to pat a co-worker." He also determined that this injury arose out of and in the course of Lomba's employment at Providence Gravure. The appellate commission sustained these findings and made the following additional findings:

"It further appears from an examination of the evidence in this case that the petitioner's problems flowed from and originally resulted from a July 13, 1978 incident, while he was employed by the same employer, at which time he injured his left shoulder while lifting bundles of work."

The appellate commission determined that Lomba's incapacity resulted from an aggravation of a previous industrial injury sustained while in the employ of Providence Gravure. Lomba never resumed his employment at Providence Gravure.

On appeal, Providence Gravure contends that the commission erred by determining that Lomba sustained a compensable injury. In order to be entitled to compensation benefits, an employee must receive "a personal injury arising out of and in the course of his employment, connected therewith and referable thereto * * *." General Laws 1956 (1979 Reenactment) § 28–33–1.

The appellate commission determined that Lomba's incapacity resulted from the aggravation of a previous injury. Basically, two types of aggravation are compensable. The first type occurs when the employee is suffering from a preexisting disease or infirmity, that the employment aggravates or accelerates to produce a disability. See Bishop v. Chauvin Spinning Co., 86 R.I. 435, 136 A.2d 616 (1957). With this type of aggravation, the employee is not required to show that the original infirmity or disease arose out of or in the course of employment. He must merely demonstrate that the employment aggravated the preexisting condition. The second type of aggravation usually occurs when the employee suffers a work-related injury that is aggravated by medical or surgical treatment. The aggravation is a compensable consequence of the original injury. See Sherry v. Crescent Co., 101 R.I. 703, 226 A.2d 819 (1967); 1 Larson, Workmens Compensation Law § 13.21 (1982).

In the case at bar, the appellate commission determined that both the preexisting injury and the aggravation arose out of and in the course of employment.

Fact-finding is within the province of the commission. DeNardo v. Fairmount Foundries Cranston, Inc., 121 R.I. 440, 444, 399 A.2d 1229, 1232 (1979). On appeal it is our duty to review the record to determine whether there is any legally competent evidence to support the findings of fact made by the commission. Absent fraud, the factual findings of the commission are binding upon this court if supported by competent evidence. See e.g., Bottomley v. Kaiser Aluminum & Chemical Corp., R.I., 441 A.2d 553, 554–5 (1982); Coletta v. Leviton Manufacturing Co., Inc., R.I., 437 A.2d 1380, 1383 (1981).

The record does contain evidence that Lomba was suffering from a preexisting shoulder condition. Doctor Mariorenzi testified that Lomba had previous episodes of

dislocation and that his injury had a chronic component. The record also contains competent evidence that the shoulder condition was aggravated when Lomba raised his left hand, with which he was holding his lunch bag, in order to touch Costa's beard. Doctor Mariorenzi testified that "the accuteness of the injury was from raising the arm with the lunch bag." The record, however, does not contain a shred of evidence to establish that Lomba's preexisting shoulder condition was caused by his employment at Providence Gravure. Lomba did not present any medical evidence on this issue. Therefore, the commissions's factual determination was based on pure speculation. We are faced with a situation where the commission made an incorrect finding of fact, and will discard that finding. The correct factual findings that remain are Lomba had a preexisting shoulder condition that was aggravated when he raised his hand to touch a co-worker's beard. We must now address the legal issue raised by this appeal.

A question of law is presented in reviewing whether or not an injury arose out of and in the course of his employment, connected therewith and referrable thereto. *DeNardo v. Fairmount Foundries Cranston, Inc.,* 121 R.I. at 449, 399 A.2d at 1234. In other words, was there a "nexus" or "causal relationship" between Lomba raising his hand to touch Costa's beard and his employment.

"To establish such a nexus or causal relationship, the employee must show that his injury occurred within the period of his employment, at a place where he might reasonably have been, and while either fulfilling the duties of his employment or doing something incidental thereto or to the conditions under which those duties were to be performed." *Bottomley v. Kaiser Aluminum & Chemical Corp.,* R.I., 441 A.2d at 554.

■ We perceive no such "nexus" in the case at bar. Because Lomba had punched in, his injury clearly occurred "within the period of his employment." When the un-

fortunate incident occurred, Lomba was on his way to the locker room to change his clothes. Therefore, the injury occurred where Lomba "might reasonably have been." However, Lomba's injury occurred when he raised his hand to touch Costa's beard. We do not believe that this activity fulfilled the duties of Lomba's employment or was "something incidental thereto or to the conditions under which those duties were to be performed."

■ Deviation from the duties of employment does not in and of itself destroy the causal nexus. However, the deviation must be substantially motivated by influences that originated in the employment. *Carvalho v. Decorative Fabrics Co.,* 117 R.I. 231, 237, 366 A.2d 157, 160 (1976).

In *Carvalho,* the employer provided an airhose for the employees to clean the lint off their clothes. An employee suffered a perforated rectum when a fellow employee placed the airhose in the vicinity of his rectum. The commission found that the injury resulted from "horseplay" and denied compensation. In reversing, this court said:

"Where the use of an airhose to clean off clothes is a daily practice, play with the hose is a risk of the employment and part and parcel of the working environment. Such activity should be regarded as part of the course of employment, particularly where, as in the instant case, the employer places in the hands of the employee the instrumentality which was used in the 'horseplay' and caused the injury." *Id.* at 237–38, 366 A.2d at 161.

In *DeNardo v. Fairmount Foundries Cranston, Inc.,* 121 R.I. at 440, 399 A.2d at 1229, the employee injured himself while using a vending machine. A metal-grate type fence in front of the machines was closed during part of the day in order to prevent thievery. When the fence was closed the employees used the vending machines by placing their arms through an opening in the grate. The employer was aware of this practice and did not prohibit employees from making purchases when the grate was closed and locked. The employ-

ee's injury occurred when he reached through the grate and whacked the coffee machine in order to release a coin that had become wedged or stuck in the machine. The commission determined that the employee was acting outside the scope of his employment when he sustained the injury. In reversing this court stated "where an employee performs a permitted act in an impermissible manner injuries arising therefrom are compensable." *Id.* at 451, 399 A.2d at 1235.

The case at bar is distinguishable from *Carvalho* and *DeNardo.* In *Carvalho,* the employer placed the instrumentality that caused the injury in the employee's hands. Therefore, the risk that someone might misuse the airhose and injure himself or a fellow employee can properly be found to be 'part and parcel' of the work environment. In *DeNardo,* the employer was aware of the practice but did not prohibit the employees from using the vending machines when the fence was closed. Therefore, the possibility that someone might injure himself when engaged in the daily practice of obtaining coffee by placing their hand through the opening in the fence can also be labeled a risk incident to the work environment. In the case at bar, Lomba did not misuse an instrumentality provided by the employer, but raised his hand to touch Costa's beard. This activity presumably was motivated by Lomba's reaction to Costa's decision not to shave. Lomba did not present any evidence that Costa's decision to grow a beard was substantially motivated by the work environment at Providence Gravure. Without such evidence we can only conclude that it was a personal grooming decision on Costa's part. Because Lomba's deviation or horseplay was not motivated by the work environment nor can it be said to be 'part and parcel' of the work conditions at Providence Gravure, the commission erred in finding a causal nexus between the employment and the injury.

For the reasons stated, the employer's appeal is sustained, the decree appealed from is reversed, and the matter is remanded to the Workers' Compensation Commission for further proceedings consistent with this opinion.

KELLEHER, Justice with whom BEVILACQUA, Chief Justice joins, dissenting.

The nexus that cannot be perceived by my Brother Shea, in my opinion, can be found by an examination of this court's reference in *Carvalho v. Decorative Fabrics Co.,* 117 R.I. 231, 366 A.2d 157 (1976), to observations made by Justice Cardozo in *In re Leonbruno v. Champlain Silk Mills,* 229 N.Y. 470, 472, 128 N.E. 711, 711 (1920) (a case involving an injury caused by the playful throwing of an apple), when this distinguished jurist wrote:

"The claimant was injured, not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment."

Many years ago some unidentified savant once said, "A little nonsense now and then is relished by the best of men." With this thought in mind, it should be noted that Lomba worked at Providence Gravure as a "fly boy." Whatever flying he performed occurred in the press room where he unquestionably came in contact with other employees who were assigned to this particular facet of the printing processes carried on by the employer.

It was pointed out in *Crilly v. Ballou,* 353 Mich. 303, 325–26, 91 N.W.2d 493, 505 (1958), that an employer hires a human being who brings to the work place all of his human characteristics—his frailties as well as his virtues—and who, during his time at work, becomes tired, thirsty, and hungry, and who may find that his temper may grow short as the day grows long. Relief comes by way of trips to the water cooler or to the coffee machine or by way of other acts in pursuit of personal comfort or by way of some skylarking or horseplay. Such deviations, the Michigan court said, "are not departures from employment, but

the very substance of it. They are the inevitable concomitants of the working relationship and conditions which produce the product."

Here, Lomba's pleasant conversation and playful reaching out for Costa's beard were part of the give and take that goes on in the work place between fellow workers. In actuality, his actions were a manifestation of good will toward Costa and, to many who read this dissent, a response to the telephone commercial which consistently exhorts the viewers to "reach out and touch someone." Surely "this trifling act of foolery"[1] was not such a deviation from Lomba's employment responsibilities as to justify the denial of compensation.

1. *Ognibene v. Rochester Mfg. Co.*, 298 N.Y. 85, 89, 80 N.E.2d 749, 750 (1948) (Desmond, J., dissenting.)