ARTHUR CHASE *vs.* GENERAL ELECTRIC COMPANY

REFERRED TO AS MONOWATT.

JULY 11, 1955.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

BAKER, J. This is an original petition brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300, to obtain compensation from the respondent, which previously was the petitioner's employer. Following a hearing in the superior court the trial justice entered a final decree denying and dismissing the petition, whereupon the petitioner duly prosecuted his appeal to this court.

It appears from the evidence that he was employed from December 1949 to May 11, 1953 as a stock clerk in the Newport plant of General Electric Company, sometimes referred

to as Monowatt—A Department of General Electric Company. His duties as such clerk included lifting, moving, and weighing "tote pans" containing small electrical appliances and equipment manufactured by respondent. Such tote pans were steel receptacles about two and one-half feet wide and one foot high weighing approximately 15 pounds when empty and between 100 and 150 pounds when full. The petitioner was required to lift the loaded tote pans from the floor near the machines, place four or five of them on top of each other on a hand truck, and pull the truck to the scales. Thereafter the pans were placed on the skid for shipment.

The petitioner testified in substance that a few days prior to June 27, 1952 while lifting a tote pan from the floor to the scales he felt a pulling sensation in his lower back accompanied by considerable pain. He stopped work for a while and when the pain had subsided he continued with his work. He was treated by the company nurse and on June 27 by its doctor, who prescribed heat treatments and rest. The petitioner, however, continued to work, feeling well at times but on other occasions having considerable pain in his back. In September 1952 he was referred by the company doctor to an orthopedic specialist connected with the Newport Hospital who treated him several times during the next four months and who prescribed the use of a brace for his lower back. The petitioner was examined by this doctor on January 13, 1953. At that time he was working, was feeling well, was "symptom free" and was advised to return for further examination when necessary. The doctor had previously diagnosed his trouble as a "ruptured intervertebral disc, lumbar spine," and advised that a myelogram and probably a disc operation might be necessary.

There is evidence that from about the middle or latter part of January 1953 until the end of February, approximately six weeks, petitioner stopped working for respondent allegedly because of pain in his back. However, he then

returned to his job with respondent doing light work, sorting scraps for salvage, which could be done by him while sitting. He continued this work until early in May 1953 when he finally left respondent's employ, complaining of severe pain in his back. He testified that he has not worked since that date. In addition to the medical treatment above described petitioner was at the Lahey Clinic in Boston, Massachusetts, for about two days in June 1953 and also was treated by a chiropractor on several occasions at about that same time.

The final decree appealed from contains the following finding of fact made by the trial justice: "That the petitioner has failed to prove, by a preponderance of evidence, that his present incapacity resulted from an injury arising out of and in the course of his employment by the respondent, connected therewith and referable thereto." The petitioner attacks this finding on several grounds but in particular he alleges that there is no evidence showing any facts contrary to those established by him and that it appears the trial justice ignored certain material evidence introduced by petitioner showing that his incapacity resulted from an injury arising out of and in the course of his employment by respondent. We have examined the transcript and the exhibits and we are unable to agree with petitioner on those issues.

The general principles of law governing the respective powers and duties of both the superior and appellate courts in a case of this type are set out clearly in *Baccari* v. *W. T. Grant Co.,* 73 R. I. 376. See also *Walsh-Kaiser Co.* v. *Della Morte,* 76 R. I. 325, and *Pearl* v. *Builders Iron Foundry,* 73 R. I. 304. From them it is unquestioned that the power to determine questions of fact is placed solely in the superior court; that the conclusion of a trial justice based directly on legal evidence or by way of reasonable inference therefrom is a finding of fact and is conclusive under the act; and that questions respecting the credibility of witnesses and the weight of legal evidence are questions of fact and not of law.

There was evidence in this case that prior to petitioner's employment by respondent he sustained a back injury on August 12, 1949 while employed as a handy man on an estate in the city of Newport. On that occasion he started to climb a ladder which broke throwing him to the ground. He testified that he fell, landing on both buttocks and wrenching his back. A doctor who treated petitioner four times diagnosed the injury as a contusion of the lower back.

Respecting the above incident the orthopedic specialist who examined petitioner later testified as follows:

"Q. Frequently ruptured intervertebral discs are the results of incidents which have occurred years before they manifest themselves, isn't that so, Dr. Trott?

A. That's true.

Q. So that it was not at all surprising for you to find recovery through conservative treatment to a point where you told us or stated that on January 13th, 1953, he was symptom free, he was working, not wearing his brace, and needn't come back to you until he needed help?

A. Yes.

Q. I want you to assume this, doctor, if you will, assume that several years, three years before June, 1952, not quite three years, two years and ten months, this patient sustained a contusion of the lower back, when he fell from a ladder while employed and was treated by a doctor for the contusion of the lower back on four separate occasions in the month of August, 1949, and I want to ask you if now, possessed with that history, that is enough of a history to suggest to you that what you found in 1952 might have been a recurrence of the trouble he suffered in August, 1949?

\*    \*    \*

The Court: Are you familiar with the question, doctor? Would you like to have it read to you?

A. I think I can answer it, that it could have been secondary to that previous accident.

Q. In other words, that distance in point of time, two years and ten months, is not at all surprising to you with relation to being a producing cause of the disc which you discovered in 1952?

A. That's right.

Q. It could be as effectively a producing cause as to anything that happened to this man three months before you saw him in 1952, could it not?

\* \* \*

Q. Is the question clear to you, Dr. Trott?

A. Yes, it could have been a cause, equally as much as the later injury."

He further testified:

"Q. Now, is it usual for such a condition as Mr. Chase has to remain latent for two years as long as a period of two years and ten months from the date of inception?

A. It's fairly common history of previous injury sometime before.

Q. Do you mean, doctor, that it's common place for one suffering from such an injury as this to go along as long as two and a half years without any symptoms, and then have a recurrence, is that what you mean to say is common place?

A. Yes."

In his rescript the trial justice made definite statements to the effect that petitioner's testimony was not fully credible. That question was important in this case. The trial justice commented on the fact that the petitioner gave the only evidence that he was free of symptoms of back injury during the period between August 1949 and June 1952. He then stated: "If this petitioner were a completely credible witness his testimony to this effect might be given considerable probative force. But in this Court's opinion, the petitioner is not entitled to full credibility. He admits that he did not, during an interview with a representative of the insurance carrier, inform that individual of his prior back injury, explaining this lapse by claiming to have completely forgotten the prior injury. This Court, frankly, cannot ac-

cept that explanation. Neither was it impressed with the studied confusion and evasiveness with which petitioner testified."

It is clear that in reaching his decision the trial justice, contrary to petitioner's argument, did not rely on evidence which had not been introduced in the case. Nor did he ignore material legal evidence which had been presented. It is plain that, as he had a right to do, he merely drew from the legal evidence reasonable inferences contrary to petitioner's contentions, and those inferences under the law amount to findings of fact. These are conclusive in the absence of fraud. G. L. 1938, chap. 300, art. III, §6. We have examined the record herein and we cannot say that the decision of the trial justice was clearly wrong.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission.

*Salvatore L. Virgadamo,* for petitioner.

*Worrell & Hodge, Lee A. Worrell,* for respondent.