*Francis V. Reynolds, Richard P. McMahon,* for respondent.

CATHERINE M. PALMER *vs.* FRIENDLY PHARMACY, INC.

APRIL 3, 1956 (as of JANUARY 17, 1956).

PRESENT: Flynn, C. J., Condon and O'Connell, JJ.

CONDON, J. This is an original petition for workmen's compensation. It is here on respondent's appeal from a decree of the workmen's compensation commission.

The cause was tried before one member of the commission. He found that the petitioner, while working in respondent's drug store on May 28, 1954, sustained a fracture of her left femur. He further found that her work caused or contributed to cause such fracture and therefore it was a personal injury arising out of and in the course of her employment, connected therewith and referable thereto. Those findings were incorporated in a decree which was affirmed by a decree of the full commission.

The respondent contends there is no legal evidence to support such findings. It claims that the evidence shows petitioner's injury was caused by an accident outside her employment or by the natural progress of a tumor within the bone. The respondent also contends that the trial commissioner misconceived the law pertaining to causal connection between the employment and the injury in work-

men's compensation cases. It claims that to establish causal connection the evidence must show that the work petitioner was doing was the sole or proximate cause of her injury and not merely contributory thereto. In other words respondent's position appears to be that the rule of proximate cause applies with the same strictness in workmen's compensation cases under our statute as it does in negligence cases at common law. Before we discuss those contentions it may be helpful if we summarize here some of the more important evidence bearing on the points raised.

On May 28, 1954 petitioner was working as a clerk at the soda fountain in respondent's drug store. At the same time a man was painting on a mirror above the back bar of the fountain. He was kneeling on the bar and his legs overhung the space where petitioner was engaged in serving customers. It was the rush hour at 12:20 p.m. and she was very busy. While preparing a milk drink for a customer she turned or twisted her body suddenly around the man on the back bar to reach for a metal container, and as she did so she felt a sharp pain in her left hip, her left leg buckled under her, and she had to grab the edge of the counter to prevent herself from falling. She was assisted to a chair and taken later to the office of Dr. William V. Hindle, an orthopedist, who ordered her sent to Saint Joseph's Hospital where X-ray photographs were taken. These showed a fracture of the left femur. Doctor Hindle operated and after the operation further X rays were taken and also a pathological examination of the hip tissue fragment was made. Later it was necessary for him to perform a second operation on petitioner. At the trial before the commissioner she was improving, but she was still disabled.

The petitioner had worked uninterruptedly for one week prior to the accident. She had been complaining of trouble with her left leg and had been absent from her employment several times during two months prior to May 28, 1954. She was not disabled during the week she worked although

she carried a cane to the drug store which she said she used only on the street while going to and from her house and the drug store. She denied she ever used it at work. There is some evidence that she had tripped on a rug in her home and fell, but she could not remember telling Dr. Hindle about it when he obtained a history from her.

Doctor Hindle testified that he had diagnosed petitioner's injury as a fracture of the left femur and that after considering the X rays, the operations and the pathological reports, he was of the opinion that she had a healing fracture prior to the accident and that as a result of the trauma at that time "she had produced a complete fracture through what had been a subclinical fracture." He explained a "subclinical fracture" as one "in which the symptoms are not sufficiently severe to warrant the individual seeking medical attention." When asked if he had an opinion as to whether petitioner's disability had any relation to her attempt to reach for an object on May 28, 1954 as testified by her, he said: "Yes, I have an opinion. * * * I'm of the opinion that the patient had this minimal or subclinical incomplete fracture, and that as a result of her turning and reaching for an object, she exerted sufficient force, so that the fracture then became complete, and has been the cause of the disability from that date on."

Doctor Leo F. Bleyer, chief pathologist at Saint Joseph's Hospital, performed the pathological examination. He testified that from such examination he diagnosed petitioner's condition as an angioblastic tumor at the site of the fracture. He further testified that such a tumor will consume the bone and during its progress make the bone prone to fracture spontaneously under normal strain such as "standing, sitting, walking, pulling, bumping against something." However, when asked to relate this to petitioner's accident he testified: "Angioblastic tumor consuming the bone, and thinning the bone, is the real underlying cause, and the twisting during that accident, and the extra pull on the

bone, was the precipitating or contributory cause." He further testified that "the contributory cause in itself would not have been able to fracture the bone without the pre-existing pathology. * * * I mean there was already something there. I mean of what she sustained in itself would not have fractured a healthy bone." Doctor Bleyer did not have the benefit of a further pathological examination at the time of the second operation.

Doctor Joseph C. Johnston testified for respondent after he had examined the X rays and had read the pathological reports. He concurred in the diagnosis of Dr. Bleyer that petitioner had sustained a spontaneous fracture as the result of an angioblastic tumor, that it was not the result of any trauma, and that it was not a result of her employment. In his report, which is respondent's exhibit 1, he explains how the fracture occurred as follows: "The cavernous type, of course, presents large spaces between which bone trabeculae and these are scattered throughout the dense fibrous tissues, weaken the shaft of the bone, and hence when this woman turned to reach for something on the shelf, she apparently was in a position that twisted the femur and in this way fractured the left femur." On the witness stand he reaffirms that opinion, as appears from the following answers to questions in his direct examination: "Q. And on the history Mrs. Palmer gave you, and on the findings which you made in your examination, and on what you learned as a result of reviewing the x-rays and the hospital records, there is no question in your mind that she had a sudden fracture of that bone at the time she reached around to do something at her place of employment, is there? A. I presume that was what it was, yes. Q. Are you satisfied on the history and findings that there was? A. Yes, it was the fracture at that time."

It thus appears from the above testimony that petitioner had a diseased or infirm condition of her left femur that finally became disabling on May 28, 1954 when she sud-

denly turned or twisted to reach for the metal container. The basic cause of such disabling fracture is differently identified by Dr. Hindle on the one hand and Dr. Bleyer and Dr. Johnston on the other. Doctor Hindle says it was the healing fracture which petitioner had sustained about two months previously but which was not serious enough to disable her. The other two doctors agree it was the diseased bone. However, while there is this difference as to the underlying cause, they all agree that the precipitating cause of her disability on the day of the accident was her sudden turning or twisting to reach for the container in the course of her employment on that day.

In our opinion, therefore, there was evidence on either medical view that the petitioner's manner of performing her work was a contributing cause of her disability. Hence the question resolves itself into whether such evidence is sufficient in law to establish a causal connection between the injury and the employment. The respondent claims it is not, because the sole or proximate cause is on one view the old fracture testified to by Dr. Hindle which admittedly did not arise out of the employment, or on the other view the angioblastic tumor which likewise was not attributable to the employment.

We are of the opinion that such contention is without merit for a number of reasons. In the first place it was established in this state many years ago that an employee who is suffering from a disease or infirmity may nevertheless be entitled to compensation if such disease or infirmity was accelerated or aggravated by his employment. *Carroll v. What Cheer Stables,* 38 R. I. 421. In that case the court apparently refused to apply the doctrine of proximate cause with the same strictness as in negligence cases, although Vincent, J. in a strong dissenting opinion urged that it should do so.

The court rejected that view and adopted substantially the view of certain cited British cases, which held that it

was sufficient to justify an award if the condition and nature of the employment *contributed* to the accident or injury. In line with such view we held a few years ago that where an injured employee had developed a "clubfoot" by reason of his subsequent service in the army which he would not thereby have developed but for the injury he received in the prior industrial accident he was entitled to compensation for such disability. The accident, we held, was at least a reasonable contributing cause and that was sufficient. *Mondillo* v. *Ward Baking Co.,* 73 R. I. 473.

It seems to be recognized more and more in the later cases elsewhere that the doctrine of proximate cause as it has been applied in negligence cases is not to be applied in workmen's compensation cases. Horovitz, Current Trends in Workmen's Compensation, pp. 509, 513; 1 Larson's Workmen's Compensation Law, §6.50, p. 44, and §7, p. 48. The latter authority states at page 48: "When employment and personal risks concur to produce injury, the injury arises out of the employment, since the employment need not be the primary cause, but need only contribute to the injury." In *Sanders* v. *Jarka Corp.,* 1 N. J. 36, 41, it was said: "If the employment is a contributing cause to the accident, the statutory requirement is met. * * * The employment need not be the sole or proximate cause of the injury; it is sufficient if it is a necessary factor leading to the accident." This view was expressly reaffirmed in *Cierpial* v. *Ford Motor Co.,* 16 N. J. 561, and applied to the facts of that case in reversing a refusal by the compensation tribunal and the county and superior courts below to award compensation.

The reason for the difference in the concept of causal connection in workmen's compensation cases and in negligence cases at common law has been well stated in *Cudahy Packing Co. of Nebraska* v. *Parramore,* 263 U. S. 418, 423, as follows: "The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship

which the employee bears to the employment because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say that it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substantially contributory though it need not be the sole or proximate cause."

The employee in that case was killed on his way to work while riding in an automobile over a railroad crossing which was the only practicable means of ingress or egress to and from his employer's plant. Clearly his employment was not the sole or proximate cause of the accident or injury. Notwithstanding this fact, the supreme court of Utah in which state the accident occurred upheld an award of compensation which was based upon a finding below that the accident arose out of the employment. The employer appealed to the federal supreme court on the ground that the Utah compensation act as thus construed and applied violated the due process clause of the fourteenth amendment to the federal constitution in that it deprived the employer of property without just cause. The supreme court rejected that contention saying that if the accident related to the employment or was incidental thereto the application of the act to cover such a case did not amount to a deprivation of due process.

In line with that approach to this problem we held in *Di Libero* v. *Middlesex Construction Co.*, 63 R. I. 509, 517, that it was sufficient to show that the injury arose out of the employment if "it was the result 'of a risk involved in the employment or incident to it or to the conditions under which it is required to be performed.'" And in *Nowicki* v. *Byrne*, 73 R. I. 89, we reaffirmed and approved such test and observed that it was in accord with the weight of authority. This also seems to be the modern liberal view in Massachusetts where in *Caswell's Case*, 305 Mass. 500, it

was stated at page 502: "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." See also *Matter of Swanson* v. *Williams & Co.*, 278 App. Div. 477, aff. 304 N. Y. 624.

In the case at bar, therefore, it was not necessary for the trial commissioner to find that the employment was the sole or proximate cause of petitioner's disabling fractured femur in order to hold that such injury arose out of her employment. So long as it was the result of a risk incident to the manner in which she was required to perform her work on the day of the accident it was a natural consequence thereof. Whether she had a "healing fracture" prior to the accident which became disabling by trauma at her work, as testified by Dr. Hindle, or an angioblastic tumor of the bone making it prone to spontaneous fracture when she suddenly turned or twisted to reach for the container, as testified by Dr. Bleyer and Dr. Johnston, her employment must be deemed at least a contributing cause of her injury. Hence the trial commissioner did not err in finding that such injury arose out of her employment and was compensable. For this reason the full commission was warranted in affirming the decree to that effect which was entered by the trial commissioner.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Boss & Conlan, James C. Bulman,* for petitioner.

*Francis V. Reynolds, Richard P. McMahon,* for respondent.