336 A.2d 553.

KENNETH L. GUILMETTE *vs.* HUMBLE OIL & REFINING COMPANY.

APRIL 21, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is an employer's appeal from a decree of the Workmen's Compensation Commission affirming a decree of the trial commissioner which awarded the employee benefits for total incapacity. Hereinafter, we shall refer to the employer as "Humble Oil" and the employee as "Guilmette."

Guilmette worked for Humble Oil as the manager and mechanic at a service station located in Hopkinton, Rhode Island. On November 25, 1971, Guilmette slipped and fell on some slush that had accumulated on the floor in the office portion of the station. The physicians who have either treated or examined Giulmette are in complete agreement on one facet of this case. They all believe that the work-related slip and fall ruptured Guilmette's fourth lumbar disc. Humble Oil's physician recommends a laminectomy. Guilmette's physician would recommend surgery if scheduled diagnostic studies indicate "further evidence of nerve root pressure." Guilmette, however, refuses to give his consent to any operation.

Humble Oil's position throughout this litigation has been that Guilmette's intransigent negative attitude toward the suggested surgery warrants a suspension of any payments due him. Testimony relative to Guilmette's refusal was given by a neurosurgeon, an orthopedist, and Guilmette.

Guilmette's neurosurgeon testified that while he could not state with certainty that surgery would alleviate his

patient's back pain, the chances of recovery would be 50 percent. He broke down the 50 percent figure. Guilmette, he said, had a 20 percent chance of returning to his normal working capacity and a 30 percent chance of returning to some form of light work.

The orthopedist who had examined Guilmette at the request of his employer is the surgeon-in-chief of the department of orthopedic surgery at the Rhode Island Hospital. He has performed over 4,000 laminectomies and stated that his experience indicated that 85 percent of those who submit to a laminectomy obtain some type of improved status. Twelve or thirteen percent remain static and the remaining percentage become worse. The chief of orthopedic surgery explained to the trial commissioner that a patient's attitude is an important factor in attaining a satisfactory recovery. In his written report, the orthopedist stated that since Guilmette was extremely apprehensive, "the prognosis in his case would have to be guarded."

Guilmette appeared at the hearing. In his testimony, he recited how he had already taken such diagnostic tests as a myelogram[1] and an electromyogram. He had been hospitalized and spent some time at home in traction. Guilmette has been under almost continuous treatment, including physical therapy, since the day he fell. At times his pain increases so much that his sleep is disturbed. The "conservative" course of treatment prescribed by the neurosurgeon affords him some respite from his lower back pain. Guilmette explained his reluctance about surgery by saying he was "scared of surgery" and "* * * there is a chance of some kind of risk in surgery, which I don't want to take."

---

[1] This court has ruled that a myelogram is not an "examination" to which an employee must submit under our compensation statute. *Cranston Print Works* v. *Pascatore,* 72 R. I. 471, 53 A.2d 452 (1947).

The test that has evolved for the determination of the validity of an injured employee's refusal to submit to a proposed course of treatment is the reasonableness of his refusal. Over 20 years ago, this court observed that an employee who is seeking or receiving workmen's compensation benefits cannot be compelled to submit to surgery which is dangerous to his life or health, involves extreme suffering, or is uncertain as to whether its ultimate result will be beneficial. *Mancini* v. *Superior Court,* 78 R. I. 373, 82 A.2d 390 (1951). An injured workman, the court declared, may not be relegated to the status of a second-class citizen in order to be guaranteed his receipt of the benefits set forth in the Workmen's Compensation Act. Rather, the disabled worker has the same right as any other individual to determine whether he will undergo surgery which his employer claims will safeguard his life or his health so long as he acts reasonably. It was also emphasized in *Mancini* that although from a medical point of view the advisability of the operation presents a question of fact, the issue of whether an employee can be forced to undergo such an operation is a question of law.

Humble Oil now argues that this court, being conscious of the tremendous improvements that have taken place in the surgical repair of ruptured discs since the days of *Mancini,* should now hold that as a matter of law Guilmette has acted in an arbitrary manner and suspend any payments due him until such time as he returns to the operating table and exposes his back and spinal chord to the surgeon's scalpel. We cannot agree. We like others, certainly stand in awe and marvel at the advances made in the medical sciences, as with the march of time the success ratio obtained through the use of various surgical techniques has continued to rise. However, the requirements of *Mancini* still must be satisfied. Even considering the advances that have been made in the area of lami-

nectomies, it was Humble Oil's burden to persuade the commission as to the absence of any dangers in the contemplated operation.

The full commission, like the trial commissioner, adopted the statistical views of the orthopedic surgeon. Accordingly, the factual basis for this appeal is one which indicated that 85 percent of those who undergo the surgery are discharged as "better." Some will return to their old jobs and others will hopefully find light work. However, the remaining 15 percent are faced with two alternatives. There may be no improvement and they will continue to experience the pain that they had before surgery, or they will end up in worse shape than they were before hospitalization.

Our Compensation Act was intended to impose upon the employer the burden of caring for the casualties occurring in his employment. *Geigy Chem. Corp.* v. *Zuckerman,* 106 R. I. 534, 261 A.2d 844 (1970); *Rosa* v. *George A. Fuller Co.,* 74 R. I. 215, 60 A.2d 150 (1948). The statistics presented by the orthopedist are truly significant and impressive.

However, there is something more in determining reasonableness than merely relying on a battery of statistics which show an improvement factor of 85 percent. While Humble Oil's eyes are fixed on the 85 percent figure, it is Guilmette who is being asked to face a procedure, which all concerned concede, is major surgery. Recently, in discussing the doctrine of informed consent and a physician's duty to disclose the known material risks inherent in a proposed course of treatment, this court remarked that a "small chance of * * * serious disablement" or a "potential disability" which greatly outweighs the "potential benefit" might be areas calling for a discussion between the physician and his patient. *Wilkinson* v. *Vesey,* 110

R. I. 606, 295 A.2d 676 (1972).[2] So, too, we think that Guilmette in deciding whether to undergo the suggested surgery is entitled to dwell on the 15 percent figure. It indicates that even if he submits to a procedure which may be followed by some extreme pain, he may be discharged as unimproved or perhaps even in worse shape than when he entered the hospital. Here, Humble Oil's own expert has produced statistics which indicate that there is indeed a risk to one who agrees to undergo a laminectomy. Legislation such as the Workmen's Compensation Act is designed to protect employees who have all types of beliefs and fears and if an employee's rejection of surgery is within the bounds of reason, his choice should be respected. *Rockford Clutch Div.* v. *Industrial Comm'n*, 34 Ill.2d 240, 215 N.E.2d 209 (1966); 1 Larson, *Workmen's Compensation Law* §13.22 (1972). If at this point in time Guilmette wishes to live with his pain, we cannot on the evidence presented fault his choice.

The employer's appeal is denied and dismissed.

*Abraham Goldstein,* for petitioner-appellee.

*Gunning, LaFazia, Gnys & Selya, Anthony G. Iannuccillo,* for respondent-appellant.

---

[2]In *Wilkinson* v. *Vesey,* 110 R. I. 606, 295 A.2d 676 (1972), we held that ordinarily an adult patient of sound mind has an absolute right to decide whether he will submit to any proposed course of treatment. In compensation cases this absolute right is diminished by an employee's obligation to extend the hand of reasonable cooperation to his employer.