399 A.2d 1229.

MICHAEL DeNARDO *vs.* FAIRMOUNT FOUNDRIES CRANSTON, INC.

APRIL 12, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J. This is an employee's original petition brought under the Workers' Compensation Act whereby the employee sought benefits for loss of use and disfigurement of his upper right arm. The trial commissioner found that the employee had failed to prove by a fair preponderance of the credible evidence that he sustained any injury to his right arm arising out of and in the course of his employment. The employee appealed to the full commission which found that the employee was acting outside the scope of his employment when he sustained the injury. The case is before us on the employee's appeal from the decree of the full commission affirming the earlier decree rendered pursuant to the decision of the trial commissioner.

The facts are undisputed. The employee was engaged as a so-called "hot-box operator." There was an area on the premises of the employer known as the cafeteria in which several food and beverage vending machines were located for the use of the employees. A metal grate-type fence was installed in front of the machines to prevent thievery. The fence was not installed by the employer.

A caterer visited the employer's premises at 9 a.m. and at 12 noon each day to sell sandwiches and pastry to the employees on their break. At these times the fence was un-locked and opened allowing the employees to gain access to the various vending machines. The employee stated that at other times during the day when the fence was closed, the employees could use the vending machines by placing their arms through the opening in the grate. It was customary for the employees to use the machines in this manner. The employer was aware of this practice and did not prohibit the employees from making these purchases during the period when the grate was closed and locked.

On August 21, 1975, at approximately 8 a.m. at a time when the fence was closed, the employee approached the coffee machine and inserted two coins into the machine by reaching through the grate with his right hand. The employee stated at the hearing before the trial commissioner that the

opening in the grate was just large enough to permit an arm to reach the machines, insert the coins and remove the coffee. One of the coins became wedged or stuck in the machine which prevented the machine from functioning properly. The employee testified he gave the machine a "whack" with his right hand and as he did, he struck the upper part of his right arm on the grate. Shortly thereafter, the arm began to swell. The employee showed his arm to his supervisor who sent the employee to the plant nurse. A large lump developed in the area of the biceps of the employee's right arm, but he was able to continue working and did not lose any time from work as a result of this incident.

The employee stated that the only restriction placed on the use of the machines was that employees were not allowed to remain in the vending machine area at times other than the permitted breaks. Once they had made their purchase, they were required to return to their work area.

An orthopedic surgeon testified that he examined the employee on November 11, 1976. The examination revealed the employee had a rupture of the biceps muscle of the right arm. It was the doctor's opinion that the employee had a permanent ten percent loss of use of the right upper extremity.

The full commission determined that the employee's injury was sustained during the course of employment but did not arise from employment because the employee's action in exerting force on the vending machine was unusual or remote from the customary practice. Consequently, the full commission determined that the employee was injured when acting outside the scope of employment, and denied benefits.

In reviewing this case we note that we have historically applied two distinct standards in reviewing decrees of the Workers' Compensation Commission awarding or denying benefits on the ground that the employee's injury did or did not arise out of and in the course of employment. In certain instances we have regarded the determination that an injury did or did not arise out of and in the course of employment as

factual in nature and applied a limited review to determine whether the commission's conclusion was supported by competent legal evidence. *See, e.g., Beauchense v. David London & Co.*, 118 R.I. 651, 375 A.2d 920 (1977); *Knowlton v. Porter Trucking Co.*, 117 R.I. 28, 362 A.2d 131 (1976); *San Antonio v. Al Izzi's Motor Sales, Inc.*, 110 R.I. 54, 290 A.2d 59 (1972); *Chase v. General Electric Co.*, 83 R.I. 269, 115 A.2d 683 (1955); *Remington v. Louttit Laundry Co.*, 77 R.I. 185, 74 A.2d 442 (1950); *Johnson v. Rhode Island Contracting Co.*, 73 R.I. 238, 54 A.2d 412 (1947); *Bride v. Cathedral Art Metal Co.*, 66 R.I. 331, 19 A.2d 317 (1941).

In other instances we have stated, as both parties contend in the present case, that the legal significance of undisputed facts is to be determined by this court. *See, e.g., Lussier v. American Textile Co.*, 110 R.I. 299, 292 A.2d 226 (1972); *Bergeron v. Kilnic Co.*, 108 R.I. 313, 274 A.2d 753 (1971); *Corry v. Commissioned Officers' Mess*, 78 R.I. 264, 81 A.2d 689 (1951); *Lupoli v. Atlantic Tubing Co.*, 43 R.I. 299, 111 A. 766 (1920). In some of these cases we have accordingly substituted our judgment on the issue of whether an injury arose out of or in the course of employment. *See, e.g., Bergeron; Corry*, both *supra*.

Clearly, the standard in reviewing the commission's conclusion on whether an injury arose out of or in the course of employment should not depend on the existence of disputed facts. *See Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 67 S. Ct. 801, 91 L. Ed. 1028 (1947); *Young v. Henry M. Young, Inc.*, 56 A.D. 2d 941, 392 N.Y.S. 2d 502 (1977); *cf. Clarke v. Rhode Island Electric Lighting Co.*, 16 R.I. 463, 17 A. 59 (1889) (negligence case); Weiner, *The Civil Jury Trial and the Law-Fact Distinction*, 54 Calif. L. Rev. 1867, 1880 (1966) (negligence). Fact-finding is clearly within the commission's province and we review only to determine if there is competent legal evidence supporting those findings. *Veloso v. Lebanon Knitting Mills, Inc.*, 111 R.I. 41, 298 A.2d 804 (1973). Once the commission has found the facts it must conclude whether the employee's injury

arose out of and in the course of employment, and our review of that conclusion rests upon the facts as found by the commission.

[2] We are empowered under the Workers' Compensation statute to review a decree of the commission on the ground that it was procured by fraud or that the commission erred on questions of law or equity. G.L. 1956 (1968 Reenactment) §28-35-30. Thus, our ability to review a decree of the commission denying benefits on the ground that the employee's injury did not arise out of the employment rests, at least analytically, on a characterization of that determination as a question of law or fact. Many eminent authorities have wrestled with the distinction between law and fact in the realm of administrative law with no discernible product. Indeed, John Dickinson noted in his frequently cited *Administrative Justice and the Supremacy of Law*, 55 (1927) that:

> "In truth, the distinction between 'questions of law' and 'questions of fact' really gives little help in determining how far the courts will review; and for the good reason that there is no fixed distinction. They are not two mutually exclusive *kinds* of questions, based upon a difference of subject-matter. Matters of law grow downward into roots of fact, and matters of fact reach upward, without a break, into matters of law. The knife of policy alone effects an artificial cleavage at the point where the court chooses to draw the line between public interest and private right. It would seem that when the courts are unwilling to review, they are tempted to explain by the easy device of calling the question one of 'fact'; and when otherwise disposed, they say that it is a question of 'law.' "

*See also* Landis, *The Administrative Process*, 145 (1938); II Cooper, *State Administrative Law*, 665-66 (1965). In fact, the futility of drawing a distinction is viewed as a functional failure by one authority who has stated that:

> "No two terms of legal science have rendered better service than "law" and "fact." They are basic assump-

tions; irreducible minimums and the most comprehensive maximums at the same instant. They readily accommodate themselves to any meaning we desire to give them. In them and their kind a science of law finds its strength and durability. They are the creations of centuries. What judge has not found refuge in them? The man who could succeed in defining them would be a public enemy. They may torture the souls of language mechanicians who insist that all words and phrases must have a fixed content, but they and their flexibility are essential to the science which has to do with the control of men through the power to pass judgment on their conduct."

Green, *Judge and Jury*, 270-71 (1930). Professor Davis has concluded that in the field of administrative law the Supreme Court consciously abstains from discussion of the law-fact distinction to maintain discretion in selecting the appropriate standard of review — either the rational basis standard or the substitution of judgment standard.[1] 4 Davis, *Administrative Law*, §§30.08; 30.14 (1958 & Supp. 1970, 1976); *See* Judge

---

[1]The ambivalence of the Supreme Court may be illustrated by its use of the rational basis test and the substitution of judgment model in two cases separated in time by only 3 years. In *NLRB* v. *Hearst Publications, Inc.*, 322 U.S. 111, 64 S. Ct. 851, 88 L. Ed. 1170 (1944), the Court used a rational basis test in refusing to disturb a decision of the National Labor Relations Board in determining whether newsboys came within the definition of the term "employees." In *Packard Motor Car Co.* v. *NLRB*, 330 U.S. 485, 67 S. Ct. 789, 91 L. Ed. 1040 (1947), the Court proceeded to substitute its judgment for that of the board in determining whether foremen came within the definition of the term "employees."

Perhaps the apex of ambivalence was reached in *Unemployment Compensation Comm'n* v. *Aragon*, 329 U.S. 143, 67 S. Ct. 245, 91 L. Ed. 136 (1946), when the Court used a rational basis test in reviewing one mixed question involving statutory interpretation (whether a labor dispute was in active progress) but exercised its independent judgment on another mixed question of statutory interpretation (whether the labor dispute was "at" the place of last employment). No philosophical or policy reasons were articulated by the Court to explain the difference in decisional approach to these two questions in the same case. Professor Davis suggests that this case defies explanation but concludes that the Court was focusing upon disposition of the case, not writing an opinion to guide the determination of whether or when a reviewing court should substitute judgment. 4 Davis, *Administrative Law*, §30.06, 227-29 (1958).

Friendly's discussion in *Pittston Stevedoring Corp.* v. *Della-ventura Corp.*, 544 F.2d 35 (2d Cir. 1976), *aff'd sub nom. Northeast Marine Terminal Co.* v. *Caputo*, 432 U.S. 249, 97 S. Ct. 2348, 53 L. Ed. 2d 320 (1977).

The inability of courts and commentators to solve the law-fact puzzle has led these authorities to advocate a practical approach to allocating functions between the administrative body and appellate court. Davis states that a number of factors may affect a court's decision regarding the standard of review. Thus, factors such as the comparative qualifications of the agency and the courts, the quality of the particular agency and the extent of delegation of power to the agency have been considered. Davis, *supra*, §§30.09; 30.10; Jaffe, *Judicial Review: Question of Law*, 69 Harv. L. Rev. 239, 264 (1955).

We recognize that the Legislature delegated to the Workers' Compensation Commission the express authority to determine all compensation questions. Section 28-35-11. We, however, are empowered to review questions of law and are persuaded that the appropriate standard in reviewing the commission's decree in this case is analogous to that applied on an appellate court's direct review of a jury's verdict in a negligence case.

Negligence has been described as a mixed question of law and fact, Davis, *supra*, §30.01 at 190; Bohlen, *Mixed Questions of Law and Fact*, 72 U. Pa. L. Rev. 111, 112 (1924); and as an application of a legal standard to a set of facts. Davis, *supra*, §30.01 at 190; Morris, *Law and Fact*, 55 Harv. L. Rev. 1303, 1312-14 (1942); *Smith* v. *Leuthner*, 156 Conn. 422, 242 A.2d 728 (1968). Similarly, in determining whether an injury arose out of and in the course of employment the commission is applying a standard to a set of facts and this determination has been described as a mixed question of law and fact, *Gallimore* v. *Marilyn's Shoes*, 292 N.C. 399, 233 S.E. 2d 529 (1977), as one of fact, *Illinois Valley Irrigation, Inc.* v. *Industrial Commission*, 66 Ill. 2d 234, 362 N.E. 2d 339 (1977); *Deines* v. *Greer*, 216 Kan. 548,

532 P.2d 1257 (1975); *Pearl* v. *Associated Milk Producers, Inc.*, 581 P.2d 894 (Okla. 1978), and as one of fact, one of law, or a mixed question depending on the circumstances of each case. *Gilbert* v. *Maheux*, 391 A.2d 1203 (Me. 1978); *Koschay* v. *Barnett Pontiac, Inc.*, 386 Mich. 223, 191 N.W. 2d 334 (1971).

The dispute in labelling such questions as negligence and whether an injury arose out of and in the course of employment as fact or law produces a stalemate. Weiner, *supra*, 54 Calif. L. Rev. at 1874-75. Thus, commentators have continually resolved the law-fact distinction in negligence-type cases in terms of the functions of the judge and jury. *See* Davis, *supra* §30.02 at 197-98; Weiner, *supra* at 1876-85; Stern, *Review of Findings of Administrators, Judges and Juries: A Comparative Analysis*, 58 Harv. L. Rev. 70, 109-11 (1944). In fact, one authority has stated that "the terms 'law' and 'fact' are merely short terms for the respective functions of judge and jury." Green, *supra* at 279.

In Rhode Island the general rule is that negligence is a question for the jury unless the facts warrant only one conclusion. *Nelson* v. *Grilli*, 117 R.I. 538, 368 A.2d 1234 (1977). Stated in another way "where the facts suggest only one reasonable inference, the trial justice may properly treat the question as a matter of law." *Kennedy* v. *Providence Hockey Club, Inc.*, 119 R.I. 70, 77, 376 A.2d 329, 333 (1977) (review of a trial court's grant of defendant's motion for summary judgment). *Garris* v. *Gloss*, 111 R.I. 453, 303 A.2d 765 (1973) (appeal from grant of directed verdict for defendant); *Waltz* v. *Aycrigg*, 103 R.I. 109, 235 A.2d 338 (1967) (review of denial of defendant's motions for directed verdict and new trial).

Although the foregoing cases do not involve direct appellate review of jury verdicts on negligence issues, the standard applied in reviewing the various motions in those cases is identical to that applied by this court in *Boss* v. *Providence & Worcester Railroad*, 15 R.I. 149, 1 A. 9 (1885). There the defendant petitioned this court to grant a new trial

in a negligence action on the grounds that the verdict was against the weight of the evidence and that the damages awarded by the jury were excessive. In concluding that the negligence issue had properly been left to the jury, the court stated that:

> "It is also equally well settled that the question as to whether or not the defendant in a given case is chargeable with negligence is ordinarily a question of fact to be determined by the jury, under proper instructions from the court as to what constitutes negligence. And the same is true with regard to contributory negligence on the part of the plaintiff. And although there are cases in which, the facts being undisputed, and being decisive of the case, it becomes the duty of the court to decide as matter of law upon the question of negligence, yet it is only in those cases where the question of fact is entirely free from doubt, and where only one conclusion can be fairly arrived at therefrom, that the court has the right to thus apply the law without the action of the jury." 15 R.I. at 154, 1 A. at 11-12.

We are convinced that a question of law is presented in reviewing whether an injury arose out of and in the course of employment when the facts, as found by the commission and supported by competent legal evidence, permit reasonable men to draw only one conclusion.[2] This standard also comports with the well-established principle that on review we will not pass on witnesses' credibility or weigh evidence. *Corey* v. *Hassenfeld Bros.*, 100 R.I. 483, 217 A.2d 82 (1966).

In the case at bar, the commission found that the employee sustained an injury during the course of his employment. The commission went on to determine that the "action of going to the cafeteria area to obtain a cup of coffee was for the

---

[2]This standard was referred to in *Bride* v. *Cathedral Art Metal Co.*, 66 R.I. 331, 19 A.2d 317 (1941).

petitioner's personal comfort or benefit, and under normal circumstances, any injury sustained in accomplishing this has been recognized as compensable." *See, e.g., Boullier v. Samsan Co.*, 100 R.I. 676, 219 A. 2d 133 (1966). The commission further found that the use of force by the employee to stimulate the machine either to return the coins deposited or to produce the liquid product for which he had paid was "remote or unusual from the customary or usual practice." The commission concluded that the employee was "acting outside the scope of his employment when he interjected the use of force on his own account into his method to retrieve the coin or to cause the vending machine to operate." We believe that having made the findings of fact regarding the employee's use of the machine, only one reasonable conclusion was open to the commission, and that a question of law was clearly presented.

Having determined that the employee was acting in the course of his employment in using the vending machine, and that any injury arising from normal use of the machine would have been compensable, the commission applied an incorrect standard in determining that his action in using force to stimulate the machine was remote or unusual, rendering his injury uncompensable.

We have steadfastly stated that an employee's injury *is* compensable if the particular facts of a case establish a causal connection or nexus between the injury and employment. *Beauchesne, supra; Carvalho v. Decorative Fabrics Co.*, 117 R.I. 231, 366 A.2d 157 (1976). In *Beauchesne* we stated that:

> "To find a nexus, we first attempt to determine if the injury occurred during the period of employment at a place where the employee might reasonably have been and while he was reasonably fulfilling the duties of his employment or doing something incidental thereto or to the conditions under which those duties were to be performed." 118 R.I. at 655, 375 A.2d at 922.

*Accord, Di Libero v. Middlesex Construction Co.*, 63 R.I. 509, 9 A.2d 848 (1939). The existence of this nexus was

reflected in the commission's statement that the injury would have been compensable if the employee had not "whacked" the machine. The delivery of the blow to the machine did not, however, render the injury uncompensable. We stated in *D'Andrea* v. *Manpower, Inc.*, 105 R.I. 108, 249 A.2d 896 (1969), that where an employee performs a permitted act in an improper manner, injuries arising therefrom are compensable. Conversely, if he performs an act which is itself forbidden, compensation will be denied. In this case the employee's obtaining coffee was not in itself forbidden, even though the reflex action of the employee in striking the machine was ill-advised or improper. Therefore, an injury arising therefrom would still be compensable. The use of the improper method does not cause the act to cease to be one incidental to and arising out of the employment.

For the reasons stated, the employee's appeal is sustained, the decree appealed from is reversed, and the case is remanded to the Workers' Compensation Commission for entry of a decree consistent with this opinion.

Mr. Justice Kelleher, concurring. While I agree with my Brother Weisberger's conclusion that as a matter of law DeNardo's injured biceps qualifies as a compensable injury, I believe there are times when a judging body, be it the commission or this court, when determining whether the particular injury arises out of and during the course of the employment, should remind themselves of the basic concept of the nature and philosophy which led to the enactment of the workers' compensation law. This appeal presents one such occasion.

Our compensation act has been described as social legislation which is remedial in nature. *Perron* v. *ITT Wire & Cable Div.*, 103 R.I. 336, 343, 237 A.2d 555, 559 (1968). One of the basic purposes of the Act is to afford a degree of economic relief and rehabilitation to those who are casualties of our industrial world by making compensation payments part of the cost of production. *Nardolillo* v. *Big G Supermarket, Inc.*, 111 R.I. 751, 755, 306 A.2d 844, 847 (1973);

*Jillson* v. *Ross,* 38 R.I. 145, 149, 94 A. 717, 717 (1915). The employer has the burden of caring for the casualties occurring in his employment, thus preventing an injured employee from being a public charge. *Guilmette* v. *Humble Oil & Refining Co.,* 114 R.I. 508, 512, 336 A.2d 553, 555 (1975). This court has long recognized that the Act's provisions must be given a liberal construction with an eye to effectuating their evident humanitarian purpose. *Roy* v. *Providence Metalizing Co.,* 119 R.I. 630, 637, 381 A.2d 1051, 1054 (1978); *Distante* v. *United Electric Railways,* 53 R.I. 258, 260, 165 A. 772, 772 (1933).

Today, an injured worker's lot is much better than that of those who labored during the pre-compensation days. One need only look at *Baumler* v. *Narragansett Brewing Co.,* 23 R.I. 430, 50 A. 841 (1901), where a worker who described himself as "short and stocky in build, deep through the chest and body, and * * * very heavy" sued his employer for negligence, seeking damages for injuries he received on January 30, 1900, when, while cleaning the space underneath the brewery's vats, he became "wedged and bound" between the floor and the vats. Successive demurrers by the brewery to the original declaration and the amended declaration[1] were sustained on the ground that Baumler had assumed the risk, with the apparent result that Baumler was never compensated for his on-the-job injuries.

Workers' compensation first came on the scene when the General Assembly, at its January 1912 session, enacted P.L. 1912, ch. 831. In upholding an attack on the Act's constitutionality, Mr. Justice Baker in *Sayles* v. *Foley,* 38 R.I. 484, 488, 96 A. 340, 342 (1916), first referred to an employee's common-law action to recover damages as an "imperfect and inadequate remedial instrumentality" and then observed that the "conditions under which great numbers of persons, men, women, and youth of both sexes, largely entirely unacquainted with each other and speaking perhaps different

---

[1]This court affirmed the sustaining of the second demurrer in *Baumler* v. *Narragansett Brewing Co.,* 23 R.I. 611, 51 A. 203 (1902).

languages, are assembled for the performance of their work, often produce a situation which renders some of the recognized defenses of the employer to a common law action unreasonable and unfair to the worker." Those defenses to which Mr. Justice Baker referred were the doctrines of contributory negligence and, as Baumler discovered, assumption of the risk. They have no place in a workers' compensation proceeding.

Although we have said that in every compensation proceeding there must be some causal relationship between the injury and the employment, we have taken great pains to point out that in compensation cases "causal connection" is not to be equated with the term "proximate cause" as used in negligence action. *Boullier* v. *Samsan Co.*, 100 R.I. 676, 680, 219 A.2d 133, 135-36 (1966); *Palmer* v. *Friendly Pharmacy, Inc.*, 84 R.I. 98, 104, 121 A.2d 665, 668 (1956). That connection, as my Brother Weisberger has pointed out, is established here because DeNardo was injured while at work as he was attempting to purchase his early-morning cup of coffee so that he could return to his "hot box" refreshed and reinvigorated. It is unfortunate that DeNardo's coin did not complete its journey through the chute, but his response was identical to that exhibited by most individuals who, after depositing the necessary funds, discover to their dismay that the vending machine fails to produce its product, be it telephone service, a newspaper, a beverage, food, candy or tobacco.

This court has repeatedly ruled that compensation is not to be denied merely because an employee's injury occurred away from the work bench or off the premises or at a time other than the regular working hours, but has stressed that an examination of the facts and circumstances must be made with an eye to ascertaining the presence of a "nexus" between the injury and the employment. *Beauchesne* v. *David London & Co.*, 118 R.I. 651, 655, 375 A.2d 920, 922 (1977); *Carvalho* v. *Decorative Fabrics Co.*, 117 R.I. 231, 236, 366 A.2d 157, 160 (1976); *San Antonio* v. *Al Izzi's Motor Sales, Inc.*, 110 R.I. 54, 56, 290 A.2d 59, 60 (1972);

*Montanaro* v. *Guild Metal Products, Inc.*, 108 R.I. 362, 364-65, 275 A.2d 634, 635 (1971); *Boullier* v. *Samsan Co.*, 100 R.I. at 679-80, 219 A.2d at 135. Consequently, compensation has been paid for injuries to an employee injured (a) at a company Christmas party (Beauchesne); (b) during a fellow employee's horseplay (Carvalho); (c) while repairing a house owned by his employer's family (San Antonio); (d) coming to work (Montanaro); and (e) while on a midmorning cigarette break (Boullier). DeNardo's confrontation with the balky coffee machine qualifies him to join company with Beauchesne, Carvalho, and the others, as occupants in what might be described as the Rhode Island Workers' Compensation Hall of Fame.

*Abedon, Stanzler, Biener, Skolnik and Lipsey, Richard A. Skolnik, Lynette Labinger*, for petitioner.

*Robert K. Argentieri*, for respondent.