Paul B. MARTIN

v.

RHODE ISLAND PUBLIC TRANSIT AUTHORITY.

No. 83–438–Appeal.

Supreme Court of Rhode Island.

March 28, 1986.

Robert W. Smith, Gunning LaFazia & Gnys, Inc., Providence, for plaintiff.

Seth Bowerman/Kirk Hanson, Hanson, Curran & Parks, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on appeal from a final decree of the appellate commission denying compensation to Paul B. Martin (employee). He had claimed a compensable injury allegedly sustained in September of 1980 as a result of job-related stress. The commission found that the conditions under which the employee had worked did not reach that level of stress under which psychic injury would be compensable. We reverse.

The employee filed an original petition seeking compensation for "[n]ervousness, anxiety, loss of appetite, sweatiness," which he claimed was caused by job stress resulting from harassment by fellow employees. He testified that he had worked for Rhode Island Public Transit Authority (RIPTA) for almost a year as a utility person working the 6 p.m. to 2 a.m. shift. His duties included checking and fueling the buses and doing whatever else the foreman instructed him to do.

During the three months preceeding the termination of his employment, he was subjected to continual vicious harassment by coworkers. He testified that his coworkers accused him of refusing to participate in a work slowdown designed to discredit their supervisor. The employee "couldn't do that to the guy so [he] just kept [his] regular pace * * *." They also accused him of having written an anonymous letter to management reporting that workers were drinking beer in the bus parking lot. The union officials required him to give a handwriting sample in front of several officers and members to determine if he had any thing to do with the anonymous letter. The sample apparently persuaded them he had not written the letter because the issue was not mentioned again.

The employee was harassed by his coworkers in several ways. They refused to speak with him for three months but would talk about him in his presence. They wrote obscenities on his locker, the fuel stand, and the water tank usually referring to employee by name. A driver struck him intentionally, he said, with one of the buses while he was working at the fuel pumps. The bus backed up to the pump considerably faster than normal and caught his arm.

The employee testified that the harassment became so intolerable that he called

his foreman and explained that he "couldn't take it anymore and [was] going to go see a doctor." He then went to the Pawtuxet Valley Emergency Room with complaints that he was very confused, upset, and nervous. As a result of the harassment he lost twenty-two pounds from his already small frame.

The employee voluntarily terminated his employment with RIPTA on September 12, 1980. After he left, he was assaulted by the union shop steward outside a bar. The steward approached employee, who was with his girl friend, and said, "You better go along with those guys or you are going to get it bad." The employee asked the steward not to threaten him. The steward then threw employee over the fence, jumped on him, choked him, and threatened to kill him. The record reflects that the shop steward was not aware that employee had left RIPTA's employ. Although the assault did happen after employee had left RIPTA it is indicative of the viciousness and the intensity of the mistreatment employee was subjected to.

A psychiatrist who rendered treatment to employee on two occasions testified that employee manifested all the standard symptoms of severe depression and said that it was directly attributable to "the harassment received on his job." There was marked sleep disturbance, great weight loss, and noticeable agitation. He diagnosed employee's condition as depressive neurosis and stated that depressive neurosis could arise suddenly, triggered by a single, traumatic event, or gradually, arising from a series of emotional traumas. The psychiatrist prescribed treatment at a community health center and concluded that employee was unable to work in any capacity. This testimony was uncontroverted because all the expert testimony presented by RIPTA was stricken from the record.

By December 1, 1981, the psychiatrist recommended that employee could return to work, provided that he was placed on a different shift. However, employee returned to work on the same shift on January 9, 1981.

The appellate commission concurred and adopted the findings of the trial commissioner. In his decision the trial commissioner stated that

"[t]his case is in my opinion within the mandate of the Supreme Court in the recent *Beulah Seitz* case, being a stress case without physical injury as a result of work conditions. The Supreme Court stated that in order to be compensable the petitioner must demonstrate a dramatic event of greater magnitude and severity. than the ordinary day-to-day work conditions * * *. Applying that law to the facts in this case, it appears to me that the fact that the petitioner here was in his own mind harassed, called a fink, and was generally the subject of slanderous statements by co-employees, the straw that broke the camel's back being the incident at the Bowling Green Tavern certainly is not a dramatic impact that can be laid upon the doorstep of the respondent-employer in this case. It appears to me that here, as in the *Seitz* case, the employee's problem is something personal to himself than something that he was exposed to at work. I am talking about as opposed to the Bowling Green Tavern incident. The activities and the contact with his co-workers at work, together with his differences of opinion with the union people there is certainly something that he had in common with other workers and I am not satisfied that he has established by a required burden of proof and weight of evidence that has been presented to me that this neurosis and resulting incapacity was work related and I will find as fact that it is not."

 The appellate commission found no error in the trial commissioner's application of *Seitz v. L & R Industries, Inc.*

*(Palco Prod. Div.),* 437 A.2d 1345 (R.I. 1981). In particular, the appellate commission noted that the assault by the shop steward upon employee occurred after he had voluntarily terminated his employment and therefore could not be attributable to RIPTA. We agree with this last point, but we do not agree that the evidence in this record warranted a finding that this man suffered only from personal problems and differences of opinion.

It is well settled that on appeal this court is bound by the commission's findings of fact when they are supported by competent legal evidence and not tainted by fraud. *Emmett v. Town of Coventry,* 478 A.2d 571 (R.I.1984); *Shola v. Dworkin Construction Co.,* 474 A.2d 1252 (R.I.1984). We shall review a finding of the commission only when a question of law or a mixed question of fact and law is in issue. *Spikes v. State,* 458 A.2d 672 (R.I.1983). A question of law exists when the facts as found by the commission and supported by competent legal evidence lead only to one permissible conclusion. *Id.; DeNardo v. Fairmont Foundries Cranston, Inc.,* 121 R.I. 440, 399 A.2d 1229 (1979). In its decision, the appellate commission did not reject any of the trial commissioner's findings; therefore, the issue before us is one of law, not fact. *Rega v. Kaiser Aluminum & Chemical Corp.,* 475 A.2d 213 (R.I.1984); *DeNardo v. Fairmount Foundries Cranston, Inc.,* 121 R.I. 440, 399 A.2d 1229 (1979).

 In *Seitz v. L & R Industries, Inc. (Palco Prod. Div.),* 437 A.2d 1345 (R.I. 1981), we were confronted with a situation that is distinguishable from the one now before us. In *Seitz* the employee encountered difficulties in interpersonal relations with other employees who did not respond to her supervisory directives. None of these difficulties were the result of malicious, intentional actions on the part of coworkers. Unlike the situation in *Seitz,* employee in this case was subjected to a concerted campaign of harassment and abuse by his coworkers that resulted in psychic injury accompanied by physical symptoms.

In ruling that not all psychic injury is compensable, we stated in *Seitz* that "though [the stressful period was] scarcely tranquil [it] did not exceed the intensity of stimuli encountered by thousands of other employees and management personnel every day. If psychic injury is to be compensable, a more dramatically stressful stimulus must be established." *Seitz,* 437 A.2d at 1351. The crucial question before us, then, is whether this employee's treatment by his fellow employees exceeded that level of stress encountered by people in the workplace every day.

The uncontradicted evidence in this case establishes that the stimulus that precipitated the employee's illness was the constant intense harassment that he endured during the last three months of his employment. He served RIPTA conscientiously even when he was faced with a work slowdown by all of his coworkers. Because of his refusal to go along with his coworkers, he was tormented. As a direct result of this intentional and malicious harassment he suffered psychic injury accompanied by drastic weight loss and other physical manifestations. The constant harassment and abuse he suffered exceeded the intensity of stress normally encountered in the workplace. Therefore, we hold that on the facts as found by the appellate commission, the employee, as a matter of law, is entitled to the protections and benefits afforded by the Workers' Compensation Act for his disability and medical expenses.

For these reasons, the appeal is sustained, the decree appealed from is vacated, and the case is remanded for further proceedings consistent herewith.

MURRAY, Justice, dissenting.

In reaching its determination, the majority has accepted the employee's allegations

of his so-called twelve-week ordeal as the indisputable truth despite the rejection of his testimony by both the trial commissioner and the appellate commission as exaggerated or inaccurate. In so doing, the majority has contravened the principles governing appellate review of workers' compensation cases by making its own independent assessment of the employee's credibility, thereby invading the exclusive domain of the trial commissioner and the appellate commission.

It is my perception that this court's role as a factfinder in workers' compensation proceedings *"is almost nil* because the General Assembly has vested this function in those who work either as trial commissioners or as members of the commission's appellate division." *Hughes v. Saco Casting Co.,* 443 A.2d 1264, 1266 (R.I.1982). Our review is limited to the actions of the appellate division. *Id.* Its findings, in the absence of fraud, are conclusive and may not be disturbed on appeal if there is any competent evidence in the record to support those findings. *Id.* From a reading of the record, it is clear that the appellate commission, notwithstanding employee's claims of harassment, found the claimant's experience to be "not unlike conditions that existed in places of employment on [a] day to day basis." The appellate commission concurred with the findings of the trial commissioner and determined that he had not "misconstrued, misconceived, misunderstood and/or otherwise failed to properly weigh the evidence." As a result, it is evident that the appellate commission supported and agreed with the trial commis-

sioner's decision to reject many of the allegations of harassment raised by employee as being a product of his own mind and not reflective of an accurate appraisal of the situation. The perceived competent evidence, which supports the appellate commission's decision, can be readily gleaned from assaying the trial commissioner's ruling and the record of the hearing before him.

This court has long adhered to the principle of refraining from engaging in an independent review of a witness' credibility. That determination is the exclusive province of the trial commissioner and, to a lesser extent, the appellate commission.[1] *Leviton Manufacturing Co. v. Lillibridge,* 120 R.I. 283, 291, 387 A.2d 1034, 1038 (1978). The basis for this legal precept is that the trial commissioner, as a firsthand observer, is in a more advantageous position than any appellate court to evaluate the credibility of a witness' testimony. This court has recently stated that the trial commissioner's impressions gathered from the appearance of a witness, his demeanor, and manner in which the witness answers questions are *"invaluable in assessing the credibility of [a witness] and ultimately in determining what evidence to accept and what evidence to reject."* (Emphasis added.) *Davol, Inc. v. Aguiar,* 463 A.2d 170, 174 (R.I.1983). The testimony presented during the course of a workers' compensation hearing is always subject to the evaluation of the trial commissioner. *Delage v. Imperial Knife Co.,* 121 R.I. 146, 148, 396 A.2d 938, 939 (1979). He or she may reject some or all of a witness' testimony as

---

1. Our case of *Davol, Inc. v. Aguiar,* 463 A.2d 170 (R.I.1983), is extremely instructive on the procedure by which the appellate commission can review the findings made by the trial commissioner based upon credibility determinations. Before the appellate commission can weigh evidence and make its own findings, it must first find that the trial commissioner's findings are clearly wrong or that the trial commissioner misconceived or overlooked material evidence in arriving at his determinations. *Id.* at 173–74. If the appellate commission, however, deter-

mines that the trial commissioner is not clearly wrong, then *the commission's ultimate determination should be based on the record as it reads after being purged of the testimony that was rejected. Id.* at 174. Irrespective of this de novo standard of review conferred upon the appellate commission by G.L.1956 (1979 Reenactment) § 28–35–28, we have emphatically stated that the issue of credibility should be determined by the trial commissioner and his findings should be given great weight on review. *Davol, Inc.,* 463 A.2d at 173.

being unworthy of belief. *Id.* Such an evaluation is a finding of fact that is not reviewable by the Supreme Court if supported by competent evidence. *Id.*

The record indicates that since RIPTA's testimonial evidence was excluded as inadmissible, the only evidence before the trial commissioner was the testimony of employee and his psychiatrist, Dr. Ben Feather. In this jurisdiction, we have consistently held that uncontradicted testimony may be disregarded on credibility grounds by the trial commissioner provided he clearly but briefly states the reasons for rejecting the witness' testimony. *Hughes*, 443 A.2d at 1266. *See generally*, 3 Larson, *The Law of Workmen's Compensation* § 80.23 at 15–426.465–485 (1983). The decision of the trial commissioner clearly indicates that he considered many of the. allegations of harassment raised by employee to be a product of the claimant's "own mind" and not reflective of the reality of the situation. In support of this determination, the record of the hearing is replete with instances of patent inconsistencies in employee's testimony.

For example, although employee alleged that he was verbally harassed by his coworkers, he could not provide specific incidents of this abuse. In fact, on cross-examination, he virtually admitted that his fellow employees did not directly harass him in a verbal fashion. The employee only alluded to a general feeling of animosity from his coworkers that *he believed* stemmed from his refusal to participate in a work slowdown.

In addition, employee also alleged that he was intentionally struck by a bus operated by another RIPTA worker. Again, however, on cross-examination, employee admitted that the bus had actually stopped long enough for him to open its fuel hatch before the bus "jilted backward" and caught his arm. This impact was of such an insignificant nature that, according to employee's own testimony, it left only a red mark on his arm. Obviously, it is conceivable to suggest that during the refueling of over 150 buses per shift some accidental contact between the vehicles and the employees servicing them would occur, especially where the practice was, as employee indicated, to flip open the bus's fuel hatch before it comes to a complete stop.

The record also reveals that employee claimed the Bowling Green Tavern incident to be work-related despite the fact that he had voluntarily terminated his employment at RIPTA some four days prior to his altercation with the union steward. Both the trial commissioner and the appellate commission, however, correctly ascertained that the Bowling Green Tavern incident could not be categorized as work-related and, hence, attributable to the employer since it occurred subsequent to the time employee had left his job at RIPTA. Furthermore, although employee insisted that his proclaimed "ordeal" lasted twelve weeks, Dr. Feather testified that the history of the alleged harassment provided to him by employee encompassed only a four-week span.

The chronology of events following employee's termination of employment at RIPTA also gives rise to query concerning his credibility. Although employee initially consulted with Dr. Daniel Collins at the Pawtuxet Valley Emergency Room, he refused to seek further medical assistance with the references given to him by Dr. Collins. Instead, he went to see his attorney, who recommended that employee visit Dr. Feather. Significantly, employee, by his own admission, did not see Dr. Feather until approximately one month after he had left RIPTA. During this four-week period he had remained unemployed and, according to Dr. Feather's testimony, extremely inactive. Although employee only met with Dr. Feather on two occasions, he failed to pursue further psychiatric treatment for his alleged depressive neurosis, despite a recommendation by Dr. Feather

to do so. It would seem that if employee was actually suffering from some type of mental affliction, he would have been more vigilant in seeking corrective medical or psychiatric treatment.

Even absent the benefit of having observed employee testify in person, a review of the record before this court does not persuade me that his testimony is convincing or credible. The patent inconsistencies and inaccuracies in employee's testimony, together with his inaction in failing to pursue further recommended psychiatric treatment, constitute sufficient competent evidence to justify the trial commissioner's rejection of employee's allegations on credibility grounds. Hence, there is no question that the trial commissioner acted within his authority as the factfinder in determining that employee's charges of harassment at RIPTA were the subjective impressions of his own mind and not a true perception of the events that occurred.

Since the appellate commission concurred with the findings of the trial commissioner, its ultimate determination that employee did not establish a compensable psychic injury under the standard enunciated in *Seitz v. L & R Industries, Inc. (Palco Prod. Div.)*, 437 A.2d 1345 (R.I.1981) was based on the record as it reads after being purged of the testimony that was rejected. *Davol, Inc.*, 463 A.2d at 174. Accordingly, I perceive the issue here to be whether the appellate commission erred in applying the *Seitz* test based on the record as it reads without the rejected testimony of employee. In my considered judgment the answer to this inquiry is a resounding NO. Taking into account the exclusion of the Bowling Green incident as not work-related and the proper rejection of employee's allegations of harassment on credibility grounds, we are left with a record that depicts a situation in which employee had merely a difference of opinion with his coworkers regarding his refusal to participate in a work slowdown. Apparently, during the course of this dispute, an anonymous letter was written to RIPTA officials concerning employees drinking in the parking lot. The employee, at the request of his union officers, provided them with a handwriting sample, which effectively negated any suggestion that he was the author of the letter. Under our *Seitz* analysis these circumstances do not warrant a finding that employee was subjected to a situation of greater dimensions than the day-to-day emotional strain and tension encountered by all employees. From this conclusion, it logically follows that employee did not suffer a compensable mental injury as defined in *Seitz*.

As previously enunciated, because this court is without the benefit of observing firsthand a testifying witness or the evidence at a hearing, we are not in a better position than the trial commissioner to make findings of fact and credibility determinations. This is especially true when the claim made by a petitioner is one that is as difficult to determine as a mental or psychic injury. I am therefore unwilling to substitute my factfinding judgment for that of the trial commissioner and the appellate commission.

Relying upon the reasons articulated above, I would affirm the decision of the appellate commission which affirmed the trial commissioner in the first instance.